509 So.2d 501 (1987)
Thomas CROCHET, Plaintiff-Appellee,
v.
Lawrence PRITCHARD, et al., Defendants-Appellants.
No. 86-466.
Court of Appeal of Louisiana, Third Circuit.
April 8, 1987.
*502 Jeansonne & Briney, John A. Jeansonne, Lafayette, for defendant-appellant-appellee.
Edwards, Stefanski & Barousse, Homer Barousse, Crowley, for plaintiff-appellee.
Glusman, Moore & Wilkinson, Donna G. Schwab, Baton Rouge, for defendant-appellee-appellant.
John C. Young, Baton Rouge, for defendant-appellee.
Before FORET, DOUCET and KNOLL, JJ.
DOUCET, Judge.
This appeal arises out of a judgment rendered on a third-party demand in favor of third-party defendant, State of Louisiana, Department of Transportation and Development (DOTD), and against third-party plaintiffs Lawrence T. Pritchard, the A.C. Company, United General Insurance Company, and Pacific Employer's Insurance Company. All third-party plaintiffs have appealed.
The original action arose out of a vehicular collision which occurred in Jennings at the intersection of Railroad and Cutting Avenues. Plaintiff, Thomas Crochet, was traveling west on Railroad Avenue when defendant, Lawrence Pritchard, who was traveling east on Railroad Avenue, attempted to make a left turn onto a short cross-over leading to Cutting Avenue. Mr. Pritchard found himself unable to move his pickup truck completely off of Railroad Avenue because another vehicle was stopped in front of him in the cross-over. The rear end of his truck extended some two to five feet into the outside part of the lane of Railroad Avenue in which Thomas Crochet was traveling on his motorcycle. Crochet's friend, also on a motorcycle, was traveling on the inside of the lane, slightly to the rear of plaintiff. Plaintiff, who could not move to the inside of the lane for fear of striking his friend, struck the rear end of defendant's truck, and was thrown from his motorcycle, sustaining lacerations and two compound fractures of his right leg. Plaintiff filed suit against Mr. Pritchard, his employer, the A.C. Company, and his employer's insurers, United General Insurance Company and Pacific Employers Insurance Company.
The defendants filed third-party demands against the DOTD alleging that it negligently designed the intersection so as to create an unnecessary danger and hazard. It was further alleged that the intersection was so defective as to render the DOTD strictly liable. The third-party demands were severed from the main demand.
A verdict was returned in favor of plaintiff and against all defendants on the main demand. The jury found that Mr. Pritchard was 100% at fault in causing the accident. Upon defendant's filing of a motion for a judgment notwithstanding the verdict, the trial court rendered a judgment finding plaintiff and Mr. Pritchard each 50% at fault in causing the accident. The award made by the jury was reduced accordingly. Defendants appealed and plaintiff answered seeking reinstatement of the jury verdict or, in the alternative, an increase in the amount of damages. Subsequently, plaintiff settled and compromised his claims against all defendants. The appeals of all defendants regarding the main demand were dismissed. Plaintiff's answer must fall since an answer to an appeal *503 may not be maintained independent from the appeal from which it springs. Moity v. Guilliot, 466 So.2d 511 (La.App. 3rd Cir.1985); Weathers v. Herald Life Insurance Company, 284 So.2d 624 (La.App. 3rd Cir.1973).
The third-party demands were submitted to the court on depositions, briefs, and the original record. The trial judge found that the intersection was not defective and did not create an unreasonable risk of harm to an ordinary prudent motorist. The judge further found that the only legal cause and cause-in-fact of the accident was the negligence of plaintiff, Thomas Crochet, and defendant, Mr. Pritchard. Third-party plaintiffs appeal claiming that the findings of the trial judge constitute reversible error.
The DOTD is not responsible for every accident which may occur on a state highway nor is it a guarantor of the safety of all travelers thereon. Generally, the DOTD has a duty to construct and maintain highways in a condition reasonably safe for persons exercising ordinary care and reasonable prudence. United States Fidelity and Guaranty Company v. State, Department of Highways, 339 So.2d 780 (La.1976). In other words, the condition of the highway must not present an unreasonable risk of harm to a reasonable motorist exercising ordinary care.
In a typical negligence action under LSA-C.C. art. 2315 against one who has the care, custody, and control of a thing which is actively involved in the causation of injury, the claimant must prove, in part, that the thing presented an unreasonable risk of harm that resulted in the damages sustained. In a strict liability action under LSA-C.C. art. 2317, a claimant must also prove, in part, that the thing created an unreasonable risk of harm that caused the damages sustained. Kent v. Gulf States Utilities Company, 418 So.2d 493 (La. 1982).
We find the dispositive issue on appeal is whether or not the trial judge erred in finding that the intersection did not present an unreasonable risk of harm to a reasonable motorist exercising ordinary care. This is a factual finding and as such we are unable to disturb it unless it is manifestly erroneous, or clearly wrong. Canter v. Koehring Company, 283 So.2d 716 (La. 1973); Arceneaux v. Domingue, 365 So.2d 1330, on remand, 370 So.2d 1262, writ denied, 374 So.2d 660.
LA.-U.S. Hwy. 90, LA. Hwy. 102 and LA. Hwy. 3055 form the intersection of Railroad and Cutting Avenues in Jennings. Richard M. Flanagan, a DOTD traffic engineer for the district encompassing Jennings, admitted that the highways intersecting at that point were under the custody and control of, and were maintained by, the State. See also LSA-R.S. 48:191.
The intersection of Railroad and Cutting Avenues is unusual in that it does not create four 90 degree angles. The intersection is skewed so that the angle of the northwest corner is approximately 50 degrees. A motorist coming from the west on Railroad Avenue, as Mr. Pritchard was, who wishes to turn left onto Cutting Avenue headed north would need to make a 130 degree turn onto Cutting Avenue. To remedy this problem a short cross-over was constructed which permitted a motorist in Mr. Pritchard's situation to turn left off of Railroad Avenue approximately 76 feet before the intersection. The cross-over traverses the northwest corner of the intersection and also allows motorists coming from the north on Cutting Avenue to turn right onto Railroad Avenue headed west. At the time of the accident, the intersection was controlled by a flashing yellow caution light for traffic on Railroad Avenue and a flashing red stop light accompanied by stop signs for traffic on Cutting Avenue. The posted speed limit on Railroad Avenue was 35 mph. The yellow caution light at the intersection naturally called for a reduction in speed when other vehicles were nearby.
A chart introduced into evidence showed that fifteen accidents occurred at the intersection during a two-year period between June 1979 and June 1981, shortly before the accident in question. Not one of those accidents was related to the alleged problems with the cross-over lane. According to Richard Flanagan, the cross-over has *504 existed since at least 1963 when he began working for the State. There is no record of any accident similar to this one having occurred from 1963 until the time of this litigation.
One expert witness testified that the left turn lane of the cross-over measured 28 feet in length and that generally, 25 feet is allowed for each automobile. Another expert testified that the same lane measured 32 feet in length and that the average automobile was 19 feet long. In either case, it is readily apparent that the left turn lane of the cross-over was able to accomodate only one full-sized vehicle.
Evaluating the cause of the accident, Dr. Olin Dart, a traffic engineering expert, testified that in his opinion, Mr. Pritchard should have avoided turning into the cross-over until his intended lane of travel in the cross-over was cleared of traffic, and that plaintiff should not have operated his motorcycle at an excessive speed through the intersection. While inspecting the cross-over, he noted a vehicle using it properly, that is, the motorist waited for the cross-over to clear before turning into it. He did not observe any incidents in which a motorist found himself in a predicament such as the one Mr. Pritchard found himself in. He admitted that the cross-over was unusual and, the few similar ones that he had seen appeared to have been constructed further away from the intersection, allowing more room for turning vehicles. However, neither Mr. Flanagan nor any of the other experts could find any textual materials indicating that a cross-over such as this one was improperly designed.
Dr. Jack Humphries, defendant's traffic engineering expert, testified that the intersection should have been modified to avoid the sort of accident which occurred in this case. He felt the design was hazardous, particularly because it concentrated too many decision points and conflicts for the motorist in a small area, making it difficult to negotiate the left turn. He also thought there was an enticement factor in that motorists tended to commit themselves to making the left turn and then discover they are unable to pull completely into the cross-over.
Appellants claim that the presence of gravel on Railroad Ave. contributed to the accident in that it interfered with plaintiff's ability to stop his motorcycle. The evidence however, shows that any such gravel was not on the roadway itself but on the side.
In examining the issue of unreasonableness, we employ a traditional test which requires a balancing of four factors: (1) likelihood of the harm; (2) gravity of the harm; (3) burden of prevention; and (4) social utility of defendant's conduct. These factors can be further explained as follows:

["Likelihood of the harm involves nothing more than a consideration of the chances that any given harm might occur. Of course, the chances of a harm occurring must be viewed in the dimensions of time and space in which the defendant acted or failed to act.] Certainly in this area, foreseeability plays no mean role, [Gravity of the harm is simply an inquiry dealing with a determination of how serious the harm would be should it occur. Burden of prevention is a consideration of the relative ease or difficulty which would have been encountered by the defendant in taking steps to prevent the harm from occurring. Social utility of defendant's conduct is a consideration of the value of the defendant's overall enterprise or activity to society or the community in which it takes place."] Crowe, Anatomy of a Tort, 22 Loy.L.Rev. 903 (1976).
In view of the absence of any previous similar accidents, it appears that the likelihood of the harm, or the likelihood of an accident occurring such as the one in this case, is minimal. The plaintiff in this case received rather severe injuries, primarily because he was riding on a motorcycle rather than driving in an enclosed vehicle. The gravity of the harm to a motorcyclist involved in such an accident could be considered substantial. Testimony at trial indicated two possible designs which may have improved the left turn situation. The *505 first was the location of the cross-over farther away from the intersection itself which would create a longer turning arc allowing room for one more vehicle in the cross-over. The second was the construction of a left turn lane at the intersection itself which would be controlled by an ordinary intersectional traffic light system including a left turn light. This second remedy would still require motorists to make a 130 degree left turn from Railroad Avenue onto Cutting Avenue. Both of these measures would have required the expropriation of private property, more so for the construction of the cross-over further away from the intersection. All things considered, the burden of prevention does not appear to have been unusually difficult. The value of the state's construction and maintenance of the highway system is unquestionably substantial and requires no elaboration.
Appellants cite the case of Copeland v. Louisiana Department of Transportation and Development, 428 So.2d 1251 (La.App. 3rd Cir.1983), writ denied, 435 So.2d 448 (La.1983) as support for their position. In Copeland this court affirmed the judgment of the trial court which found that the State was negligent in failing to correct a hazardous condition which existed at a Lafayette intersection. The issue of strict liability under LSA-C.C. art. 2317 was not addressed. We distinguish Copeland, supra, from the instant case since in Copeland the State had recommended, and the City of Lafayette had passed a resolution requesting, that one of two actions be taken to correct the hazardous condition which contributed to the accident in question. Here, there is no evidence that the design of the cross-over was ever recognized as a hazard to an ordinary prudent motorist by either the DOTD or the City of Jennings. This court upheld the factual conclusion reached by the lower court in Copeland, supra, and we are likewise upholding the factual conclusion reached by the lower court in this case. Other than noting that the facts and circumstances in the case before us differ from those in the other cases cited by defendants, we find it unnecessary to distinguish them.
After carefully reviewing the record balancing the factors mentioned herein, and considering the evidence as a whole, we are unable to say that the trial court was manifestly erroneous or clearly wrong in finding that the cross-over did not present an unreasonable risk of harm to an ordinary and reasonably prudent motorist.
For the reasons assigned, we affirm the judgment of the trial court. Costs of this appeal are assessed against appellants.
AFFIRMED.