# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00118-SCT

*CITY OF OCEAN SPRINGS, MISSISSIPPI*

*v.*

*PSYCAMORE, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/21/2012 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | ROBERT W. WILKINSON |
| | AMY LASSITTER ST. PE' |
| | JOHN B. EDWARDS, II |
| ATTORNEYS FOR APPELLEE: | WILLIAM LEE GUICE, III |
| | MARIA M. COBB |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/31/2013 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE DICKINSON, P.J., KITCHENS AND CHANDLER, JJ.

### DICKINSON, PRESIDING JUSTICE, FOR THE COURT:

¶1.     Psycamore, LLC, sought approval to operate a mental-health treatment facility in an area of Ocean Springs, Mississippi ("the City"), where the zoning ordinance allowed facilities for the examination and treatment of human patients.  The City of Ocean Springs denied Psycamore's application, but the circuit court reversed and the City appealed.  Because we find that the City's decision was arbitrary and capricious, we affirm the circuit court's ruling.

**FACTS AND PROCEDURAL HISTORY**

¶2.	Any occupant seeking to change the use of an existing structure in Ocean Springs, Mississippi, must obtain either a certificate of occupancy or a use permit prior to commencing the new intended use.[1]  City ordinances divide the city into various zoning districts, listing the permissible uses of property within the corresponding geographic areas.[2]

¶3.	When the proposed use in the occupant's application for a certificate of occupancy conforms to one of the uses listed in the applicable district ordinance, the City must issue a certificate of occupancy.[3]  But when the proposed use is not listed in the applicable zoning district ordinance, the occupant may not conduct the proposed use at the subject property without obtaining a use permit,[4] which requires public notice and a hearing before the city planning commission.[5]  The planning commission must then decide whether the proposed use is "similar to or not in conflict with those uses specifically permitted."[6]  If it does, the mayor and board of alderman must then approve the commission's recommendation.[7]

¶4.	Psycamore, LLC, provides a wide range of clinical mental-health treatment.  It leased an existing structure located at 1101 Iberville Drive in Ocean Springs for a proposed new

---

[1]Ocean Springs, Miss., Zoning Ordinance § 901.2 (2007).

[2]Ocean Springs, Miss., Zoning Ordinance §§ 401-412 (2007).

[3]Ocean Springs, Miss., Zoning Ordinance § 901.2(1) (2007).

[4]Ocean Springs, Miss., Zoning Ordinance § 408.3 (2007).

[5]*Id.*

[6]*Id.*

[7]*Id.*

treatment facility. It filed an application with the City to obtain a certificate of occupancy. The application identified "psychiatric partial hospitalization" as its intended property use. Notations on the application provided that all programs would operate Monday through Friday, with no session conducted later than eight p.m. The application further explained that patients would not stay at the facility overnight and that Psycamore was not a detox or rehabilitation facility. Finally, the application provided that Psycamore would not conduct lab work or cooking on site.

¶5.    The city planning commission met to discuss Psycamore's application and intended use, and to determine whether it conformed to a listed use in the applicable Commercial-3 zoning ordinance. Because the applicable ordinance did not specifically list "psychiatric partial hospitalization" the commission refused Psycamore a certificate of occupancy.

¶6.    Although Psycamore believed its proposed use – a "medical or paramedical clinic" – was indeed listed in the ordinance, it filed an application for a use permit under protest, arguing that the commission should have issued a certificate of occupancy following its first hearing and that it should not have to apply for a use permit. The City noticed a hearing on the use permit application.

¶7.    In preparation for the hearing, the City's planning director, Eric Meyer, prepared a report analyzing the Psycamore application. Meyer concluded that Psycamore was a "medical or paramedical clinic" as defined by city ordinance, and that the commission should have issued a certificate of occupancy. In the alternative, Meyer concluded that Psycamore was similar to, and not in conflict with, a medical or paramedical clinic, and should received a use permit.

3

¶8.     The planning commission held the public hearing to determine whether Psycamore should receive a use permit. Psycamore's counsel argued that the City's denial of Psycamore's certificate of occupancy constituted discrimination based on the patients' disabilities; that Psycamore was a medical clinic as defined by city ordinance; and that Psycamore was more similar to a medical clinic than other facilities the City permitted to operate in the same type of zoning district.

¶9.     The commission heard from opponents of the use permit, who argued that denial of Psycamore's use permit would be a nondiscriminatory land-use decision, and that the facility should not be allowed in a historic district because its traffic would congest a residential area. They also argued that partial psychiatric hospitalization was not a permitted use in the applicable zone. At the conclusion of the hearing, the planning commission failed to reach a consensus and referred the matter to the board of alderman without recommendation.

¶10.    The mayor and board of aldermen heard arguments similar to those at the planning commission hearing. Psycamore proposed a compromise in which the city would issue a temporary use permit and, after six to twelve months of monitoring Psycamore's services, meet again to discuss a permanent use permit. Meanwhile Psycamore would contribute $5,000 to improve the city infrastructure surrounding the facility.

¶11.    Thereafter, the board of alderman held a special meeting and denied Psycamore's use permit, citing as reasons for the denial traffic concerns, the residential and historic nature of the area, and the substandard infrastructure. The board stated that it must use good judgment in the interest of public welfare to reduce delayed travel times, air pollution, traffic accidents, roadway congestion, and delays for emergency vehicles.

4

¶12.    Finally, the board referenced reasons stated "in the October 24th Memorandum Brief of attorney John Barber, specifically sections 1, 2, 4, and 5."[8] The board stated that it did not base its decision on the patients' conditions, noting that it had allowed other mental-health services in that neighborhood.

¶13.    Psycamore filed its notice of appeal and bill of exceptions in the Circuit Court of Jackson County. The circuit court reversed the City's decision, finding it unsupported by substantial evidence. The City appealed.

**ANALYSIS**

¶14.    In zoning cases, the circuit court sits as an appellate court, and this Court must directly examine the City's decisions.[9] "The standard of review in zoning cases is whether the action of the board or commission was arbitrary or capricious and whether it was supported by substantial evidence."[10] This Court will not set aside the decision of the mayor and board of aldermen "unless clearly shown to be arbitrary, capricious, discriminatory, illegal, or without substantial evidence."[11]

---

[8]Those sections argued that Psycamore was not a medical or paramedical clinic, was not similar to or not in conflict with a medical clinic, that granting Psycamore a use permit would conflict with the city's Comprehensive Development Plan, and that denying Psycamore's use permit would not violate the Americans with Disabilities Act.

[9]*Mayor & Bd. of Aldermen, City of Clinton v. Welch*, 888 So. 2d 416, 418 (Miss. 2004) (citing *Board of Aldermen v. Conerly*, 509 So. 2d 501, 503 (Miss. 1987)).

[10]*Drews v. City of Hattiesburg*, 904 So. 2d 138, 140 (Miss. 2005) (citing *Perez v. Garden Isle Community Ass'n*, 882 So. 2d 217, 219 (Miss. 2004) (citing *Broadacres, Inc. v. City of Hattiesburg*, 489 So. 2d 501, 503 (Miss. 1986))).

[11]*Id.* (citing *Perez*, 882 So. 2d at 219; *Carpenter v. City of Petal*, 699 So. 2d 928, 932 (Miss. 1997)).

5

¶15.    At issue here are two City decisions: the decision to deny Psycamore's certificate of occupancy and the decision to deny Psycamore's use permit.  Because we find that the City's first decision – denying the certificate of occupancy – was arbitrary and capricious, and not supported by substantial evidence, we affirm the decision of the circuit court, and we need not address the City's denial of Psycamore's use permit.

¶16.    In explaining why we give great weight to a city's interpretation of its ordinances, we have said that the best interpretation of a city ordinance is the city's history of applying that ordinance.[12]  And in this case, we are presented with a second, equally persuasive guide to interpreting the relevant ordinance.  The issue we find dispositive – whether the City's decision to deny Psycamore's certificate of occupancy was arbitrary and capricious – turns on whether Psycamore is a "medical or paramedical clinic."  Because the City has defined the term "medical or paramedical clinic" for purposes of applying the City ordinance, and has applied it in the past, our decision is guided by that definition and the City's past application of that term.

¶17.    Any occupant who wishes to change the use of an existing structure in Ocean Springs is entitled to issuance of a certificate of occupancy within three days of filing an application so long as the intended use is permitted in the zoning ordinance governing the relevant geographic area.[13]  The City denied Psycamore's application for a certificate of occupancy,

_____

[12]***Fondren North Renaissance v. Mayor and City Council of Jackson***, 749 So. 2d 974, 983 (Miss. 1999) (quoting ***Faircloth v. Lyles***, 592 So. 2d 941, 945 (Miss. 1991)).

[13]Ocean Springs, Miss., Zoning Ordinance § 901.2(1) (2007).

6

finding that its proposed use – "psychiatric partial hospitalization" – was not a permitted Commercial-3 use.

¶18.    Psycamore's leased property falls within a Commercial-3 highway commercial district, and Section 408 of the City's zoning ordinance enumerates the permitted uses in a Commercial-3 highway commercial district.[14] That section lists several uses such as medical and dental laboratories, veterinary services, public garages, and car dealerships. It also incorporates all uses permitted in a Commercial-2 community commercial district.[15]

¶19.    Section 407 enumerates the permitted uses in a Commercial-2 community commercial district, and it incorporates all uses allowed in a Commercial-1 neighborhood commercial district.[16]    Finally, Section 406 enumerates the permitted uses in a Commercial-1 neighborhood commercial district, including "[m]edical and paramedical practice or clinics licensed by the State of Mississippi for human care."[17]

¶20.    Psycamore argues that it intends to operate a "[m]edical or paramedical practice or clinic" and that the City erred by finding to the contrary. City ordinance defines a medical or paramedical office as a "facility for the examination and treatment of human patients."[18] Accordingly, we must determine whether the City acted arbitrarily and capriciously when

--------

[14]Ocean Springs, Miss., Zoning Ordinance § 408.2 (2007).

[15]*Id.*

[16]Ocean Springs, Miss., Zoning Ordinance § 407.2 (2007).

[17]Ocean Springs, Miss., Zoning Ordinance § 406.2 (2007).

[18]Ocean Springs, Miss., Zoning Ordinance § 202 (2007).

it determined that Psycamore was not a facility for the examination and treatment of human patients licensed by the State of Mississippi. We find that it did.

¶21. Arbitrary acts are those "not done according to reason or judgment, but depending on will alone."[19] An act is capricious when "done without reason, in a whimsical manner, implying either a lack of understanding of or a disregard for the surrounding facts and settled controlling principles."[20]

¶22. Psycamore's application noted that it would provide psychiatric care Monday through Friday, with no session conducted later than eight p.m. The application explained that patients would not stay at the facility overnight and that Psycamore was not a detox or rehabilitation facility. Finally, the application provided that Psycamore would not conduct lab work or cooking on site.

¶23. The minutes of the planning commission's hearing state that Psycamore provides outpatient treatment of stress, anxiety, bipolar disorder, depression, and compulsive disorders. They reflect that Psycamore does not offer inpatient confinement and that it accepts only voluntary patients. Psycamore serves as both a resource and a referral service for physicians, hospitals, other treatment facilities, mental-health therapists, and counselors.

¶24. The minutes describe Psycamore's treatment as daily group therapy in the areas of stress management, self-esteem, relationships, cognitive behavioral therapy/positive thinking, grief and loss, anger management, family issues, life/coping skills, expressive therapy, and

---

[19]*Burks v. Amite County School Dist.*, 708 So. 2d 1366, 1370 (Miss. 1998) (*McGowan v. Mississippi State Oil & Gas Bd.*, 604 So. 2d 312, 322 (Miss. 1992)).

[20]*Id.*

8

yoga therapy. Psycamore also provides weekly individual therapy conducted by a licensed professional counselor and weekly medication review by a psychiatrist, but medications are not administered on site.

¶25. Psycamore does not treat alcoholism, drug abuse, schizophrenia, mental retardation, dementia, severe psychosis, or physically combative or actively suicidal individuals. The minutes also include Psycamore's program schedule, with programs Monday through Friday, beginning at ten and eleven in the morning and one, two, and three in the afternoon. Despite these findings, the planning commission denied Psycamore's certificate of occupancy.

¶26. Also, in preparation for the use permit hearing, the City's own planning director – finding that Psycamore was a medical or paramedical clinic – recommended that the planning commission reconsider its certificate-of-occupancy decision. In making his recommendation, Meyer provided a list of twenty-six medical clinics operating within Commercial-3 zoning districts. Meyer noted that none of those businesses was required to obtain a use permit. He also informed the commission that Psycamore had two other facilities licensed with the State of Mississippi. Finally, he concluded that Psycamore would provide outpatient treatment akin to a clinic and "would never be considered a hospital." Nevertheless, the commission refused to follow Meyer's recommendation.

¶27. Considering the foregoing findings by the planning commission and the information provided by Meyer, we find the planning commission's decision was arbitrary and capricious when it held that Psycamore was not "facility for the examination and treatment of human beings."

9

¶28. All of the evidence presented to the planning commission supported a conclusion that Psycamore was a facility for the examination and treatment of human beings licensed by the State, meeting the definition of a medical or paramedical "facility for the examination and treatment of human beings," as provided in the City's ordinance. In denying Psycamore's certificate of occupancy, the City ignored the definition in its own ordinance definition – an act that was clearly arbitrary and capricious.

¶29. The City also argues that Psycamore is not a medical or paramedical clinic because it is dissimilar to doctors' and dentists' offices which typically are considered medical clinics. But nothing in the City ordinances or the City's past practice provides notice or even an indication of such a requirement. In fact, Meyer's list of entities previously approved by the City to operate in the same type of zoning district – "the best interpretation of what the wording in the ordinance means is the manner in which it is interpreted and applied by the enacting and enforcement authorities"[21] – included a facility that, as conceded by the City's counsel, provides the same services as Psycamore.

¶30. The city planning commission simply ignored its own definition, past practices, and all of the evidence presented to it by denying Psycamore's certificate of occupancy. This disregard for the facts and well-settled principles may be illustrated best by counsel's statement at oral argument that, had Psycamore simply called itself a medical clinic in the initial application, the City would have issued a certificate of occupancy without question.

**CONCLUSION**

---

[21]*Fondren North Renaissance*, 749 So. 2d at 983 (quoting *Faircloth*, 592 So. 2d at 945).

10

¶31. Because the city planning commission ignored its own definition, past practices, and all of the relevant evidence when it denied Psycamore's certificate of occupancy, we find that the denial was clearly arbitrary and capricious. Accordingly, we affirm the ruling of the Jackson County Circuit Court reversing the decision of the City, and we remand this case to the City for further proceedings consistent with this opinion.

¶32. **AFFIRMED.**

**WALLER, C.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR. RANDOLPH, P.J., NOT PARTICIPATING.**

11