OPINION OF THE COURT — by
Judges ELLIS & HAMPTON:
This case is referred to the supreme court upon the following case agreed, vizi
1st. Martin Hackler deceased, the former husband, of the wife'of Lewis Cabel, settled on the land in question, in the now county of Jefferson, and state of Mississippi, in the year 1797, and occupied and cultivated the same, until his decease, which took place on the 6th December 1803.
2d. After the death of Martin Hackler, his widow,, the present Mrs Cabel, on the part of, and as natural guardian of Charlotte May, Samuel, Anna, Maria, Jacob and Esther Hackler, heirs, of Martin. Hackler, deceased, entered a claim for said land,.in the.name-of the said heirs and legal representatives.
3d. On the 11th day of June 1806, the board of commissioners west of Pearl River, gave a certificate to the heirs and legal representatives of said Martin Hackler deceased, certifying that the said heirs were entitled to a patent for said land, (640 acres) from the United States, by virtue of an act of congress regulating the grants of land, and providing for the sale of the land, of the United States south of the state of Tennessee, passed 3d March 1803.
4th. A patent for said land issued from the President of the United States, on the 15th day of July 1819, confirming the claim to said land in the legal representatives of Martin Hackler, deceased, (being a donation.) Now the question for the decision of the court is, whether the petitioners are entitled to dower in said land.
At the trial before the superior court, the plaintiffs in ejectment, Hack;-ier’s heirs, obtained a verdict, and a motion for a new trial was made azul referred to this rdfirt, and the reasons assigned are—
*92 1. The judge mistook the law.
2. The verdict is contrary to evidence and law.
3. The heirs of Hackler are estopped to question the title of their- ancestor. The defendant claims in right of his wife, who was the widow of Martin Hackler, deceased, dower in the premises'in question. The premises in question, is the place whereon the said Martin died, and where he had lived several years previous to his death. The widow’s dower never has been assigned her. in the estate of the deceased.
The counsel of the defendant contended, that the court erred in ’charging the jury, that dower was not allowed a widow in land claimed, as a donation, when the husband died previous to the emanation of a patent, and in charging the jury, that the widow could bo ejected from the mansion house of the deceased, previous to the assignment of her dower.
Before we proceed to the examination of the questions arising in this case, it may be well to remark that the second reason assigned — The verdict being cqntrary to law and evidence, is the only one this court can respect, except so much of the third, as is admitted in the case agreed. It is obvious, that if the judge erred in his charge, to the jury, exceptions should have been taken at the trial, and an exhibition of the points made by a bill of exceptions, duly signed and sealed by the judge. Such exceptions would then have framed a part of the record, and might have been examined, by this courts — but as the case is now presented j in the absence of this evidence, and in the absence of the judge’s report, sitting out the contested points of his charge, this court cannot proceed upon the-bare assignment of errors, as conclusive or satisfactory evidence of the misdirection of the judge. When this case was under argument, our impressions •were unfavorable, to the motion, but upon a careful examination of the authorities, and the principles involved, we have had some reason to doubt the correctness of this hasty bias.
The case agreed, admits, that on the 11th day of June 1806, the board of commissioners west of Pearl river, issued a certificate to the heirs and legal representatives of Martin Hackler, certifying, that they were entitled to a patent from the United States, for the premises in question, and that in pursuance of said certificate, a patent eminated in their names, .on the 15th day of July 1819, These proceedings were had under the act *93 of Congress, passed 3d March 1003, anterior to the death of the ancestor _ which occurred on the 0th of December, in the same year, and the certificate of the board of commissioners, which is confirmed by the subsequent patent, is satisfactory evidence, that Ilackler had entitled himself, and on his subsequent death, his heirs and legal representatives, to the statutory title conferred by the said act of Congress — Let us now enquire into the nature and character of that title. By adverting to the act, sec. 2, page 518, — 3d laws United States, we read, “that the every person, or legal representative or representatives of every person, who, being either the head of a family, or of twenty one years of age, did, on that day of the year, seventeen hundred-and ninety seven, when the Mississippi territory was finally evacuated by the Spanish troops, actually inhabit and cultivate a tract of land in said territory, not claimed, by virtue, either of the. preceding- section relating to the confirmation of British or Spanish warrants or orders of survey in the hands of actual settlers and residents on the 27 th October 1795, or of any British grant, or of the articles of agreement and cession between the United States and the state of Georgia, the said tract of land thus inhabited and cultivated, shall be granted. Provided, however, that not more than one tract shall be thus granted, to any one person, and the same shall not contain more than six hundred and forty acres; and provided also, that this donation shall not be made to any person who claims any other tract, in the said territory, by virtue of any British or Spanish grant or order of survey.” The first, reflection which presents itself upon the reading of this clause of the act, is, that it contains the recognition, on the part of the government, of a good and adequate consideration, of equal validity, in reference io the accruing right of the citizen to a full pecuniary one. It sots out all tho circumstances of settlement &c. which are deemed a sufficient inducement to the government, to make a donation grant; and in applying the principle to the present case, we fmd the proper authorities have declared, that Hackler, the husband and andestor, in regard to the litigated premises, occupied the attitude required by this act. The government, has therefore, by their own acknowledgement, received of him all the consideration required for such grant, which is termed a donation, to contradistinguish it from such as aro made for a pecuniary consideration, all which, in contemplation of this act, *94 are prospective, and not immediate, except such cases, in regard to wind* the consideration is supposed to have passed, to a former government.
The second obvious inference from the premises, is, that the government, for the consideration expressed, which you may call if you please, conditions precedent, performed, has by the said clause, vested a legal right to a donation grant in all persons, designated by its description. A right of that nature and character, which by the terms of the act, is made de-scendable and inheritable. As however, in the clause relating to those persons to whom pre-emption preference is given, the same language is used in favor of the heirs and legal representatives, it may perhaps, be going too far to say, that the act of Congress in this behalf, can be considered as affording the most satisfactory evidence, of the peculiar character of the cession, or grant, Congress intended to make to donees. But however inconclusive, this language may be, there are other terms and expressions, which cannot be easily misunderstood. The expression used in the act, “the said tract of land thus inhabited, and cultivated, shall be granted15' and the expression “donation,” are certainly words importing, when spoken in reference to land, the transfer or investiture of some title. In the clause referring to the preference given in the purchase, to those who were actual settlers and cultivators of the land at the time of the passage of said act, the courtesy and benefit intended to be conceded to them, are very clearly • described and ascertained, and extend to a prospec-, tive pecuniary consideration. But it is contended, that the full consideration was not received by the government, because there were to be paid by donee certain fees of office and for surveying, which constituted conditions precedent, and that there were measures, to be pursued, before the consummation of title in a patent, which only could invest a full and perfect legal title, to sustain the former part of this objection, the court is referred to the case of Vanhorn’s lessee vs. Dorance, in 2 Dallas 317.
On examination, we consider this case as proceeding upon the construction of a statute divesting the right of certain Pennsylvania claimants, and vesting them in certain Connecticut settlers, upon conditions, to be performed by the latter, to consúmate their inchoate titles before commissioners. The courts view with jealousy, the operation of a law, affecting the vested rights of one citizen, to the advantage and favoritism of another. *95 and maintained an equitable construction of this act, in its aspect impairing the rights of the Pennsylvania claimants, and insisted upon a punctilious conformity, on the part of the Connecticut settlers, to all its requirements. We cannnot deem this case analagous to the present, where the government is a volunteer in its bounty to one of its citizens, and on this account, if on no other, the declaration of its munificence, should, by the courts, receive in reference to the rights of the citizen a most liberal an equitable construction. Proceeding by this rule, we have no difficulty in ascertaining, that the execution of fees, very inconsiderable indeed, the only pecuniary contribution required, is by no means intended to enrich the coffers of the government, as a substantive part of the consideration, upon which the grant .proceeded, but only are equitablerequirments on the part of the government, that the donee should defray a reasonable proportion of the expenses incurred, for his benefit, in a more specific location and identity of the property ceded. The regulation, respecting the commissioners and the proceedings to be had before them, in reference to donation grants, are governed, and dictated in part, by the same policy, having in one view, the ascertainment of the unappropriated domain of ■the government, and in the other, the designation and quieting of the rights and claims, of the citizens. This conclusion will be manifest, and the subject will be further illustrated, by reference to the clauses in this act, which speak of these subjects. A quotation of these passages at length, would occupy more time and labor than in reference to other engagements of the court, can be devoted to this case; we shall content ourselves with such remarks as occur, on careful examination of them. On this scrutiny, we perceive, that as respects all the matters objected to, donations are equally formidable as regards British grants, which in their registry, certificate, patent, and concurrent expenses, are pari passu with donations. Would it be contended, that the wife of a British grantee, on the death of her husband, subsequent to the passage of the act of recognition, and anterior to the issuing of a certificate by the commissioners, and the emanation of a confirmatory patent, would not be entitled to her dower? If not, as we suppose it would not, neither can such principle be necessarily contended for in relation to donation grants of the United States. In regard to the former, the time had certainly gone by, during the former gov- *96 eminent, when the latent right of the wife to dower had existed, and which, on the death of the husband at that time, would have been developed and recognized. In what transition and revolution, are we to ‘look for the abduction of the right existing, though only in obeyance? Certainly not in such acts of the government of the United States, succeeding to the sovereignty of. the country, which were adopted for the express purpose, in part, of favoring and establishing these claims, without any diminution of any of the legal implications or consequences, except by the lihaitations imposed, for the purpose of producing a seasonable exhibition of them.. It is sufficiently clear to us, that the government did not consider them as inchoate, imperfect titles, considerations for which had yet to pass, but obscure, perfect titles, for which consideration had already passed to the former government, and the measures adopted in relation to thorn, were merely to ascertain and designate them, that they might not be enchroached upon in the future cessions of the unappropriated domain, and to prevent unnecessary litigation. The same reasoning we conceive is applicable to the donation grants of tho American government.
If the court should he mistaken as to tho degree and perfection of right and title, confirmed to Hacklcr, their opinion, as to what disposition they ought to make of the present motion, may possibly derivo some support from the doctrine contained in 5 Cruize on real property 551, where it is said, there is no rule hotter founded in law, reason and convenience than this, “that all tho several parts and ceremonies, necessary to complete a conveyance, shall he taken together as one act, and operate from the substantial part by relation. Livery, relates to the feoffment; invol-mentjto the bargain and sale, a recovery to the'deed which leads the use; so admittance shall relate to tho surrender.” 'The same doctrine is recognised in a late determination. Holdfast vs. Clapham, 1 Term Rep. 600, and in 5 Cruize 545.
As to tho propriety of the attempt, on the part of the heirs, to repudiate the title of the ancestor, denying that they take by descent, while they allege they take by purchase, it may be remarked, that this class of cases, are, “sui generis,” in which an adherence to great technicality would be unreasonable. Presenting their patent they toll us, wo take by purchase *97 and not by descent, cast. We refer them to the act of Congress, which ¡ooks at this very patent to them, through the avowed consideration, and irrevocable vested rights of their ancestor, and ask, if these had not preceded, where, or wherefore, could they have received the patent? It is the act of Congress which constitutes the title, indestruetable even by the government itself, as well before, as after the emanation of the patent, which is only one evidence of title, but not the only one. The act of Congress, and the proceedings of the board of commissioners, constitute in themselves a perfect title, in the original donee, which cannot be questioned or revoked by the government itself, (much less by the heirs of the do-nee claiming under it) and the patent must relate to them as to the origin and foundation of the title. We may well then, refer the heirs to the doctrine laid down in Gray vs. Harrison, 2 Haywood 292, and tojhe known law, that a man shall not repudiate the title set up by his adversary, under which he himself raises claims.
We cannot perceive without some emotion, an attempt on the part of so many children, whose filial obligations and gratitude to an affectionate mother, were increased by her care and vigilance in securing to them this very property, to turn her out of that mansion, where so much of her life andhealthhad been devoted in maternal tenderness and watchful affection, to cherish, succor and protect them, during the helplessness of infancy and the ignorance and indiscretion of youth.
Let a new trial be' granted.