COLEMAN, JUSTICE, CONCURRING:
 

 ¶ 54.
 

 I concur with the majority's opinion and decision to affirm the trial court. I write separately to address the issue raised in our earlier order for additional briefing,
 
 i.e.
 
 , whether the requirement found in Mississippi Code Section 11-51-75 that the president of the board from which an appeal is sought must sign a bill of exceptions is a jurisdictional prerequisite that must be met before the circuit court can hear such an appeal. Because the statute in question neither mandates nor forbids that the courts do anything whatsoever, I fail to see how they can infringe on the court's procedural prerogative in violation of the Mississippi Constitution's separation of powers mandate. Indeed, the signature as a jurisdictional requirement is not a function of the statutory language at all; it results from the Courts' own confusing precedent. Accordingly, I would hold that the signature requirement of Section 11-51-75 is not unconstitutional.
 

 ¶ 55. Furthermore, I would take the present opportunity to clarify our precedent as to bills of exceptions as more fully set forth below, which should simplify the process for citizens and their attorneys by returning to the procedure as it was historically. The bill of exceptions is a vehicle for appeals that existed at the time Mississippi became a state. It was the means for appealing lower court decisions for well over half of Mississippi's two-hundred year history. However, if in its bill-of-exceptions jurisprudence of the last fifty years, the Mississippi Supreme Court has not made a mess of the bill of exceptions, what we have done will do until the mess gets here. It is time to revisit some of the decisions that have obscured what was once an oft-used and well-understood vehicle for appeals and give clarity to those whose practice of law and work on the bench requires them to work with the bill of exceptions. I propose doing so by the straightforward expedient of returning to the process as it was for much of our history.
 

 I. Three primary legal principles govern the instant case.
 

 ¶ 56. As will be discussed below, our pronouncements on the use of the bill of exceptions over the last few decades have been confusing and, to be frank, outright inconsistent. Accordingly, in order to seek jurisprudential clarity, three primary legal principles must be remembered and emphasized throughout any analysis of the signature requirement. First, the Constitution of 1890 gives the Legislature authority to set the appellate jurisdiction of the circuit courts. Second, the question before the Court in the case
 
 sub judice
 
 is one of interpreting legislative intent. Third, before declaring a statute unconstitutional, we must be satisfied that it is unconstitutional beyond a reasonable doubt.
 

 A. The Constitution of 1890 gives the Legislature power to assign appellate jurisdiction to the Circuit Courts.
 

 ¶ 57. Article 6, Section 156 of the Mississippi Constitution of 1890 establishes jurisdiction in the circuit courts as follows:
 

 The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and
 
 such appellate jurisdiction as shall be prescribed by law.
 

 (Emphasis added.) The last nine words of Section 156 authorize the Legislature to grant and define appellate jurisdiction to the circuit courts.
 

 Johnson v. Sysco Food Servs.
 
 ,
 
 86 So.3d 242
 
 , 245 (¶ 13) n.16 (Miss. 2012) ;
 
 Knox v. L.N. Dantzler Lumber Co.
 
 ,
 
 148 Miss. 834
 
 ,
 
 114 So. 873
 
 (1927). The Legislature conferred appellate jurisdiction upon the circuit court in Section 11-51-75 (and its statutory ancestors).
 

 B. The question before the Court in the case
 
 sub judice
 
 is one of legislative intent.
 

 ¶ 58. Because the Legislature establishes circuit court appellate jurisdiction, and does so in Section 11-51-75 by authorizing appeal from a county or municipal board decision via a bill of exceptions, the question of whether the signature requirement is jurisdictional is one of statutory interpretation. Of course, our goal when interpreting statutes is to divine the "true meaning of the Legislature."
 
 Scaggs v. GPCH-GP, Inc.
 
 ,
 
 931 So.2d 1274
 
 , 1276 (¶ 10) (Miss. 2006) (quoting
 
 Stockstill v. State
 
 ,
 
 854 So.2d 1017
 
 , 1022-23 (¶ 13) (Miss. 2003) ). "Our role is to determine the legislative intent and constitutionality of acts passed by the Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will."
 
 Stockstill v. State
 
 ,
 
 854 So.2d 1017
 
 , 1023 (¶ 13) (Miss. 2003).
 

 ¶ 59. The first two of the three primary principles that should guide the Court's holdings today lend themselves to a simple conclusion. Before we can declare the signature requirement found in Section 11-51-75 to be unconstitutional as a jurisdictional prerequisite, we must first determine whether the Legislature intended it to be a jurisdictional prerequisite at all.
 

 C. Before declaring the signature requirement unconstitutional, we must be satisfied that it is unconstitutional beyond a reasonable doubt.
 

 ¶ 60. A strong presumption exists that a statute is constitutional, and we will not declare it to be otherwise unless it is proven unconstitutional beyond a reasonable doubt.
 
 Atwood v. State
 
 ,
 
 183 So.3d 843
 
 , 845 (¶ 5) (Miss. 2016) (citing
 
 Johnson v. Sysco Food Servs.
 
 ,
 
 86 So.3d 242
 
 , 243-44 (Miss. 2012) );
 
 see also
 

 Wilson v. State
 
 ,
 
 194 So.3d 855
 
 , 868 (Miss. 2016) ("The Court may be able to overrule its own cases, but absent a showing beyond a reasonable doubt that a statute is unconstitutional, the Court may not overrule statutes."). We resolve all doubts in favor of the statute's constitutionality.
 
 Atwood
 
 ,
 
 183 So.3d at 845
 
 .
 

 ¶ 61. As more fully discussed below, a bill of exceptions is, in and of itself, a jurisdictional requirement should an aggrieved party wish to appeal a decision of a county or municipal board. However, the long history of our opinions in bill of exceptions cases convinces me that a perfect bill of exceptions is not a jurisdictional requirement and, more narrowly and pertinent to today's case, the signature of the president of the board is not a jurisdictional requirement. Given that we must resolve doubts in favor of constitutionality, I would hold that Section 11-51-75 does not establish the signature requirement as a jurisdictional prerequisite; accordingly, as it does not exist in the statute, it cannot be an unconstitutional infringement upon the procedural prerogative of the court.
 

 II. The bill of exceptions has been a vehicle for appeals since the first days of Mississippi's statehood.
 

 A. Bills of exceptions were the vehicle for appealing lower court decisions.
 

 ¶ 62. From Mississippi's very beginning, the bill of exceptions provided the vehicle for appealing lower court decisions to the Mississippi Supreme Court.
 
 See, e.g.,
 

 Lewis v. Sulcer
 
 ,
 
 1 Miss. 21
 
 (1818) ;
 
 Hackler's Heirs v. Cabel
 
 ,
 
 1 Miss. 91
 
 (1921). It was, simply, "a written statement of objections
 to the decision of the court upon a point of law, made by a party to the cause, and properly certified by the judge or court who made the decision."
 
 Williams v. Ramsey
 
 ,
 
 52 Miss. 851
 
 , 856 (1876). It purposed "to put the decision objected to upon record, for the information of the court having cognizance of the cause in error."
 

 Id.
 

 ¶ 63. Prior to the creation of the bill of exceptions in England by the statute of Westminster, the record did not contain the evidence and interlocutory rulings of the lower court.
 
 Williams
 
 ,
 
 52 Miss. at
 
 856 ;
 
 see also
 
 4 C.J.S.
 
 Appeal and Error
 
 § 577 (2017). The statute required trial judges to sign the bill and assured that the exceptions would be in the record.
 

 Id.
 

 Mississippi had a statute that provided that, should the trial judge refuse to sign the bill, two attorneys present for the proceedings could do so.
 

 Id.
 

 at 857-858
 
 . In the alternative, the appellant could petition the Supreme Court for mandamus to compel the trial judge to sign the bill.
 
 Ex parte Robson
 
 ,
 
 1 Miss. 412
 
 (1831). The statutes providing for the bill of exceptions as a means to appeal a criminal matter remain today.
 
 Miss. Code Ann. §§ 99-17-39
 
 through 99-17-45 (Rev. 2015).
 

 ¶ 64. The appealing party presented the bill to the trial court first rather than the reviewing court.
 
 Williams
 
 ,
 
 52 Miss. at
 
 857-858 ;
 
 Cabel
 
 , 1 Miss. at 92 ;
 
 Lewis
 
 , 1 Miss. at 22. The procedure is in that regard similar to our modern procedure of filing a notice of appeal in the trial court rather than the appellate courts. Miss. R. App. P. 4(a). To timely file the bill of exceptions, the appellant need only place the bill in the hands of the clerk whose task it later would be to file the bill with the reviewing court. 4 C.J.S.
 
 Appeal and Error
 
 § 587 (2017). The rights of the appellant are not then lost should the trial judge delay in signing the bill. 4 C.J.S.
 
 Appeal and Error
 
 § 588 (2017).
 

 ¶ 65. After presentment of the bill to the trial court, the trial court and the appellant would reach agreement on its contents in a process known as "settlement." 4 C.J.S.
 
 Appeal and Error
 
 § 585 (2017). After settlement, the trial court would send the bill to the appellate court. The Supreme Court, or High Court of Errors and Appeals, would be restrained by the bill of exceptions and, like today's record on appeal, could not look outside the matters contained in the bill of exceptions when considering the appeal.
 
 Vaughan v. State
 
 ,
 
 11 Miss. 553
 
 , 554, 1 Morr.St.Cas. 245,
 
 3 S. & M. 553
 
 (1844).
 

 B. The Legislature expanded the bill of exceptions to provide for appeals from the decisions of boards governing county and city governments.
 

 ¶ 66. When the Mississippi Legislature adopted the bill of exceptions as a vehicle for appealing the decisions of county and municipal boards, the procedure for its use was clear because it long had been used to appeal lower court decisions, as discussed above. Of course, using the bill of exceptions to appeal a decision of a governing body changed the dynamic in that, rather than being an appeal between two adversaries as to which a neutral judge would verify the record, the governing board was opposed to the party seeking the appeal. Despite standing in opposition to the appealing party, the president of the board must still sign the bill of exceptions, thereby verifying the accuracy of the record. The resulting tension leads us to where we are today, with presidents of boards of supervisors and mayors of towns refusing, often on the advice of counsel, to sign the bill of exceptions. Nevertheless, the bill of exceptions was a workable, and really quite simple, mechanism for appeal-even in the county or municipal board context.
 

 The first expansion of the bill of exceptions beyond courtroom appeals occurred when the Mississippi Legislature passed a statute that provided that "it shall and may be lawful for all persons who feel themselves aggrieved by the judgment of the board of police of the county, to appeal by bills of exception or
 
 certiorari
 
 to the Circuit Court of his county."
 
 Yalobusha Cty. v. Carbry
 
 ,
 
 11 Miss. 529
 
 , 546 (1844)
 
 , overruled on other grounds by
 

 Dismukes v. Stokes
 
 ,
 
 41 Miss. 430
 
 , 435 (1867). The board of police was empowered to hear audit claims against the county and was otherwise the forerunner of the modern county board of supervisors,
 
 Carbry
 
 , 11 Miss. at 542-543 (Brief of Defendant in Error). The statute allowing appeals therefrom via a bill of exceptions closely resembled the modern counterpart at issue today, but it also allowed appeal via a writ of
 
 certiorari
 
 to the circuit court.
 
 Id.
 
 at 546. In
 
 Board of Police of Yalabusha County v. Ray
 
 ,
 
 20 Miss. 342
 
 ,
 
 12 S. & M. 342
 
 (1849), the Court noted that an appeal from a decision of the board of police first would be filed with the board and would be timely if there filed within the time set by statute.
 

 ¶ 68. Rather than filing anything with the circuit court immediately, the "appeal" was first filed with the board, much like a notice of appeal is filed with the trial court-not the appellate court-today.
 
 See
 

 Faison v. City of Indianola
 
 ,
 
 156 Miss. 872
 
 ,
 
 127 So. 558
 
 , 559 (1930) ;
 
 Spencer v. Washington Cty
 
 ,
 
 92 Miss. 230
 
 ,
 
 45 So. 863
 
 (1908). Then, again similar to a direct appeal, the bill of exceptions would be prepared, or "settled," through the joint effort of the aggrieved party and the board. Finally, the clerk of the board would forward the completed, signed bill of exceptions to the circuit court.
 
 See
 

 Spencer
 
 ,
 
 92 Miss. at 230
 
 ,
 
 45 So. at 864
 
 .
 

 C. In requiring the president of the board to sign the bill of exceptions, the Legislature provided a means for verifying the record, but did not establish a requirement that, if not met, automatically robbed the circuit court of the authority to hear the appeal.
 

 ¶ 69. Turning to the signature requirement in the context of appeals from boards of supervisors and aldermen, the Court through the centuries
 
 [17]
 
 has both considered unsigned bills of exceptions and refused to consider them. It is clear that the bill of exceptions itself is a requirement, and that the parties cannot waive it.
 
 McIntosh v. Amacker
 
 ,
 
 592 So.2d 525
 
 , 527 (Miss. 1991) ("The bill of exceptions required by the general statute is necessary to vest the circuit court with appellate jurisdiction.");
 
 Cox v. Bd. of Supervisors of Madison Cty.
 
 ,
 
 290 So.2d 629
 
 (Miss. 1974) ;
 
 Bridges v. Clay Cty. Supervisors
 
 ,
 
 57 Miss. 252
 
 (1879). However, imperfect bills of exceptions did not automatically equate to a complete absence of jurisdiction. Rather, the imperfections spoke to the absence of an adequate record.
 
 Michael v. West Hatchie Drainage Dist.
 
 ,
 
 135 Miss. 798
 
 ,
 
 100 So. 392
 
 , 393 (1924) ;
 
 see also
 

 Adcock v. Bd. of Supervisors of Winston Cty.
 
 ,
 
 191 Miss. 379
 
 ,
 
 2 So.2d 556
 
 (1941) ;
 
 Bussey v. City Council of City of Greenville
 
 ,
 
 102 So. 182
 
 (Miss. 1924) (suggesting that failure to include complete bill of exceptions defeated attempted appeal because it left the reviewing court without a record).
 

 ¶ 70. Without question the bill of exceptions acted to preserve the record of proceedings before the county or municipal
 board,
 
 see
 

 Hall v. Franklin County
 
 ,
 
 184 Miss. 77
 
 ,
 
 185 So. 591
 
 , 595 (1939), and like the signature of the judge in cases at law appealed via the bill of exceptions, the signature of the president of the board certified the accuracy of the record.
 
 Jones v. Bd. of Supervisors of Newton Cty.
 
 ,
 
 110 Miss. 328
 
 ,
 
 70 So. 404
 
 (1915) ;
 
 Williams v. Bd. of Supervisors of Rankin Cty.
 
 ,
 
 109 Miss. 278
 
 ,
 
 68 So. 249
 
 (1915). The refusal to consider unsigned bills of exceptions was not based upon the idea that the appellate court had not the power, or jurisdiction, to hear it but, rather, upon the problem presented by an unsigned bill of exceptions that could not be considered to fulfill its purpose of providing a reliable record of the proceedings below.
 

 ¶ 71. In
 
 Graves v. Monet
 
 ,
 
 15 Miss. 45
 
 ,
 
 7 S. & M. 45
 
 (1846), for example, the High Court of Errors and Appeals refused to consider an issue on appeal raised in an unsigned bill of exceptions. In providing the reason, the Court wrote, " [W]e must be controlled by the record, and are therefore compelled to disregard the first bill of exceptions."
 

 Id.
 

 at 47
 
 . Although in
 
 Roach v. Tallahatchie County
 
 ,
 
 78 Miss. 303
 
 ,
 
 29 So. 93
 
 (1901), the Court affirmed the circuit court's dismissal of a bill of exceptions because the president of the board of supervisors did not sign it, nothing in the one-paragraph opinion suggests that it departed from the long-established law that the signature was required to verify the record rather than give power to the court to hear the matter.
 

 ¶ 72.
 
 Polk v. City of Hattiesburg
 
 ,
 
 109 Miss. 872
 
 ,
 
 69 So. 675
 
 (1915), best demonstrates that the absence of the signature of the president of the board or mayor from the bill of exceptions does not deprive the circuit court of the power, or jurisdiction, to review the case. In
 
 Polk
 
 , the City of Hattiesburg closed a public alley, and a citizen of the city aggrieved by the decision sought to appeal the decision via a bill of exceptions.
 
 Id.
 
 at 675-676. On the day of the decision, the aggrieved citizen presented his bill of exceptions to the mayor and commissioners.
 
 Id.
 
 at 676. The record showed that the mayor and commissioners reviewed the bill and agreed it to be a correct statement of the facts and decision. The next day, the mayor stated that the bill of exceptions was correct, but he refused to sign it on advice of the city attorney.
 
 Id.
 
 The circuit court dismissed the bill of exceptions due to the absence of the signature, but the Supreme Court reversed.
 
 Id.
 

 When a bill of exceptions embodying the facts and decisions is duly presented, it is made the duty of the presiding officer to sign the same. He has no discretion in the matter. If it is admitted that the bill of exceptions is a correct memorial of the facts and decisions, can the circuit court dispense with the signature of the mayor, and inquire into the merits of the appeal, after having first ascertained that the bill of exceptions stated the facts and decisions? We believe that
 
 McGee v. Beall,
 

 63 Miss. 457
 
 [455 (Miss 1886) ], and
 
 Robinson
 
 [
 
 Robertson
 
 ]
 
 v. Mhoon
 
 ,
 
 68 Miss. 713
 
 [712],
 
 9 So. 887
 
 [ (Miss. 1891) ], answer this query in the affirmative. The appellant in this case did all that was in his power to do "by preparing and tendering a proper bill to the proper officer," and he "ought not to suffer by reason of his [the officer's] neglect to promptly sign the same."
 

 Polk
 
 ,
 
 69 So. at 676
 
 . Once again, the Court made it clear that the purpose of the signature was not to confer jurisdiction, but to affirm the correctness of the record. Because in
 
 Polk
 
 , the mayor and board agreed the bill was accurate, the circuit court should have reached the merits. Even the
 
 Polk
 
 dissent phrased its disagreement in terms of who had the authority and duty to certify the record rather
 than whether the signature conveyed jurisdiction upon the circuit court.
 
 Polk
 
 ,
 
 69 So. at 677-678
 
 ("Since the Legislature has not conferred upon the circuit courts power to settle bills of exception to the action of boards of supervisors and municipal authorities, it necessarily follows that such courts have no right so to do.") (Smith, J., dissenting).
 

 ¶ 73.
 
 Polk
 
 can be contrasted with
 
 Wilkinson County v. Tillery
 
 ,
 
 122 Miss. 515
 
 ,
 
 84 So. 465
 
 (1920). There, an owner of a cow, Tillery, submitted a claim to the county for the value of the cow after it was killed in a dipping process ordered by the county.
 
 Id.
 
 at 465. The county board of supervisors refused to pay.
 
 Id.
 
 Tillery filed a petition for appeal with the clerk of the board and requested the clerk "to make and file transcript of my claim and order of the board, returnable to the next session of the circuit court of said county."
 
 Id.
 
 The clerk of the board sent the circuit court a record containing Tillery's written claim and the order of the board of supervisors denying it.
 
 Id.
 
 "Some months" later, Tillery filed, in circuit court, a petition for
 
 certiorari
 
 seeking to require the clerk of the board to send the court an unsigned bill of exceptions that Tillery maintained was correct.
 
 Id.
 
 However, while the county admitted it had not signed the bill of exceptions, the board disputed its accuracy.
 
 Id.
 
 The circuit court granted the writ of
 
 certiorari
 
 and, when the unsigned bill of exceptions arrived, overruled a motion by the county to quash it.
 
 Id.
 
 The circuit court rendered a verdict on the bill of exceptions in favor of Tillery.
 
 Id.
 

 ¶ 74. On appeal by the county, the Supreme Court of Mississippi held that the circuit court erred in issuing
 
 certiorari
 
 and in refusing to quash the bill of exceptions.
 
 Id.
 
 at 466. Contrasting the case to
 
 Polk
 
 , the
 
 Tillery
 
 Court wrote, "Since the record fails to show that this unsigned bill of exceptions was in point of fact agreed to as being true and correct, then there is no bill of exceptions embodying the proceedings had before the board of supervisors."
 
 Id.
 
 The issue, again, was the reliability of the record, not the power of the circuit court to hear an appeal.
 

 III. Over the last half-century, the Court has held it lacks jurisdiction to hear cases that are fatally flawed for lack of a record, but in reality the flaw in the record did not remove the fundamental authority of the court to preside over the bill of exceptions appeal.
 

 ¶ 75. The Court lost sight of the distinction between its jurisdiction, or power to hear a case, and the effect of an insufficient record on the merits of an appeal via bill of exceptions in
 
 Stewart v. City of Pascagoula
 
 ,
 
 206 So.2d 325
 
 (Miss. 1968). There, the City of Pascagoula authorized a contract with Jackson County assuming the county's water and sewer bonds.
 

 Id.
 

 at 326
 
 . Two aggrieved persons, Stewart and Brown, sought to appeal the decision via a bill of exceptions.
 

 Id.
 

 While signed by the president of the mayor,
 

 Id.
 

 at 327
 
 , the bill of exceptions did not include the contract at issue.
 

 Id.
 

 at 326
 
 . The
 
 Stewart
 
 Court wrote, "The authority and jurisdiction of the circuit court are thus limited and circumscribed by statute. As an appellate court, it considers the case as presented by the bill of exceptions. It can not go outside the record as made in the bill of exceptions." In writing the quoted sentences, the Court without citation to relevant authority equated the usually fatal flaw of an insufficient record with the authority of the circuit court to hear an appeal from a county or municipal board via a bill of exceptions. As shown above, it is true that the jurisdiction of the circuit court to hear appeals from county and municipal boards is set forth in the bill of exceptions statute.
 

 Additionally, it is true that the bill of exceptions sets forth the record that constrains the circuit court's review. However, it does not necessarily follow that the failure to provide an adequate record, fatal though it may be to the appeal, deprives the circuit court of the authority to hear the case. With respect, the
 
 Stewart
 
 Court jumped to its conclusion.
 

 ¶ 76. In doing so, the
 
 Stewart
 
 Court misplaced reliance on two cases. The Court wrote, "This Court has held that a proper bill of exceptions on appeal is necessary to confer jurisdiction on the appellate court." In so writing, the Court relied on
 
 McDonald v. Spence
 
 ,
 
 179 Miss. 342
 
 ,
 
 174 So. 54
 
 (1937), and
 
 Richmond v. Enochs
 
 ,
 
 109 Miss. 14
 
 ,
 
 67 So. 649
 
 (1915). At issue in
 
 McDonald
 
 was the sufficiency of a bill of exceptions from chancery court to the Supreme Court.
 
 McDonald
 
 ,
 
 179 Miss. at 342
 
 ,
 
 174 So. at 54
 
 . The statute then authorizing appeals from chancery court via a bill of exceptions contained more, and more specific, requirements of the bill of exceptions than the statute at issue in
 
 Stewart
 
 and in today's case.
 
 McDonald
 
 ,
 
 179 Miss. at 324
 
 ,
 
 174 So. at 54
 
 . In
 
 McDonald
 
 , the chancellor did not sign the bill of exceptions but, rather, signed a statement regarding a "special bill of exceptions" which, in effect, directly disavowed that the purported bill of exceptions met the statutory requirements.
 

 Id.
 

 In
 
 Richmond
 
 , the appellee moved to strike the transcript from the record.
 
 Strickland
 
 , 109 Miss. at 14,
 
 67 So. at 649
 
 . The transcript at issue was submitted after the term of court ended to counsel for the appellant, who then delivered it to the attorney for the appellee, who refused to examine and correct it.
 

 Id.
 

 at 14
 
 ,
 
 67 So. at 650
 
 . Upon receiving the transcript back, counsel for the appellant filed it with the circuit clerk without providing it to the circuit judge.
 

 Id.
 

 The Supreme Court granted the motion to strike the transcript,
 

 id.
 

 but nowhere does the
 
 Richmond
 
 Court discuss appellate jurisdiction or whether the improper transcript robbed it of the jurisdiction otherwise to hear the appeal.
 

 ¶ 77. Undiscussed by the
 
 Stewart
 
 Court was the
 
 Polk
 
 Court's holding that the flaw in the bill of exceptions there-the absence of the required signature-was not fatal to the circuit court's exercise of jurisdiction over the matter.
 
 Stewart
 
 also contradicts the later case of
 
 Yellow Cab Company of Biloxi v. City of Biloxi
 
 ,
 
 372 So.2d 1274
 
 (Miss. 1979), in which the Court noted the omission from the bill of exceptions of briefs filed with the city but wrote, "Even though a bill of exceptions is defective, if the judgment is erroneous on its face, it will be reversed...."
 

 Id.
 

 at 1277
 
 .
 

 ¶ 78. One year after
 
 Stewart
 
 , the Court decided
 
 Weathersby v. City of Jackson
 
 ,
 
 226 So.2d 739
 
 (Miss. 1969). There, J.L. Weathersby opposed a rezoning ordinance pending before the Jackson City Council.
 

 Id.
 

 at 739
 
 . After the city approved the ordinance, he appealed via a bill of exceptions.
 

 Id.
 

 The circuit court dismissed the bill of exceptions for the failure of Weathersby,
 
 et al.
 
 , to include a copy of the ordinance.
 

 Id.
 

 at 740
 
 . In contrast to
 
 Stewart
 
 , in
 
 Weathersby
 
 , the Court reversed the circuit court's decision and held that enough information existed elsewhere within the bill of exceptions to determine the content of the ordinance.
 

 Id.
 

 at 741
 
 . Once again, the Court utilized the term "jurisdiction" in its reasoning.
 

 We feel that the actual decision of the City Council was correctly and truthfully stated and embodied in the bill of exceptions. The highest officer of the City of Jackson approved the statement of the decision contained in the bill of exceptions. The bill of exceptions was sufficient to confer
 
 jurisdiction
 
 on the
 circuit court to hear and consider the appeal as an appellate court.
 

 Id.
 

 (emphasis added).
 

 ¶ 79. There is a dissonant ring to the Court's use of the word jurisdiction in
 
 Stewart
 
 and
 
 Weathersby
 
 . Appellate jurisdiction in the circuit court is, by operation of the Mississippi Constitution, a matter of legislative prerogative. Miss. Const. art. 6, § 156. While Section 11-51-75 by its plain language requires that an appeal from a county or municipal board be accomplished via a bill of exceptions and that the appeal be made within ten days, it contains very little else that sets forth jurisdictional requirements. Notably absent from the statute-unlike the statute at issue in
 
 McDonald
 
 upon which the
 
 Stewart
 
 Court in part relied-are specific content requirements. Jurisdiction is defined as a "court's power to decide a case or issue a decree."
 
 Jurisdiction
 
 , Black's Law Dictionary (10th ed. 2014). When the
 
 Stewart
 
 and
 
 Weathersby
 
 Courts write in terms of jurisdiction, they misuse the term. It is clear that failing to embody a sufficient record in the bill of exceptions can be fatal to the attempted appeal-as shown above, such has been the case since the first days of our State. Yet, in other cases, we have allowed appeals made via the bill of exceptions to proceed despite flaws.
 
 Yellow Cab Company of Biloxi v. City of Biloxi
 
 ,
 
 372 So.2d 1274
 
 (Miss. 1979). However, we should today clarify
 
 Stewart
 
 and
 
 Weathersby
 
 and make it clear that, fatal or not, an insufficient record does not rob the circuit court of jurisdiction as the term is properly understood. Such clarification would harmonize our bill of exceptions jurisprudence of the second half of the twentieth century and today with that of Mississippi's first one hundred and thirty-three years. Further, it would allow flexibility to the circuit courts to consider whether, imperfections aside, the record presented by the bill of exceptions does provide sufficient information for review, as happened in
 
 Polk
 
 and the possibility of which was recognized in
 
 Yellow Cab
 
 .
 

 IV. No good reason exists to believe the Legislature intended the signature of the president of the county or municipal board to confer jurisdiction on the circuit court.
 

 ¶ 80. Moreover, the same conclusion applies to the signature requirement. As discussed above in the first part of the instant opinion, nothing in the wording of the statute applies the signature requirement to the courts. By its plain language and as recognized in early caselaw, it sets a ministerial duty of the president of the underlying board. As demonstrated in
 
 Polk
 
 , the court did not consider the absence of a signature to be a jurisdictional bar. Later, in
 
 Gill v. Woods
 
 ,
 
 226 So.2d 912
 
 (Miss. 1969), the Court once again held that the circuit court must consider a bill of exceptions unsigned by the president of the Marshall County Board of Supervisors. More strikingly than in
 
 Polk
 
 , where the board agreed that the bill of exceptions was accurate, the
 
 Gill
 
 Court reversed the circuit court's dismissal of an unsigned bill of exceptions where the record failed to show that the board or its president objected to the form and content of the bill of exceptions.
 
 Gill
 
 , 226 So.2d at 915.
 

 ¶ 81. It is one thing to conclude that a matter presented to a court is fatally defective, such as when a complaint fails to state a viable claim for relief and is dismissed pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure or, more aptly, when an appellate court refuses to consider an assignment of error because the appellant fails to present a sufficient record. It is quite another to conclude that a court has no power, or jurisdiction, to entertain a matter before it. In light of the foregoing authorities setting
 forth the history of the uses of the bill of exceptions as a vehicle for appeals, first from trial courts and later, by legislative expansion, from county and municipal boards, I would hold that the failure to present a bill of exceptions signed by the president of the board falls into the former category rather than the latter. If the absence of the signature were an absolute procedural bar, then the
 
 Polk
 
 Court would not have allowed the matter before it to proceed in the absence of the signature and the
 
 Tillery
 
 Court would not have bothered pointing out the disagreement of the board with Tillery regarding the accuracy of the bill of exceptions at issue there.
 

 ¶ 82. Because I am convinced the Legislature never intended the signature requirement to be a jurisdictional prerequisite and, given the three operating principles set forth at the beginning of the instant opinion, I would hold that the signature requirement found in Section 11-51-75 is constitutional.
 

 V. The Court should take the present opportunity to realign bill of exceptions practice with the language of the statute and the correct, historical practice of appeals from county and municipal boards.
 

 ¶ 83. Finally, to restore fairness and sensibility to the bill of exceptions process, I would hold that, going forward, the ten-day deadline contained in the statute applies to the filing of the bill of exceptions with the clerk of the county or municipal board. In
 
 Board of Supervisors of Marshall County v. Stephenson
 
 ,
 
 160 Miss. 372
 
 ,
 
 134 So. 142
 
 (1930), the Court held that the aggrieved party had perfected an appeal from a decision of the board of supervisors on the day the bill of exceptions was filed with the clerk of the board of supervisors.
 
 Id.
 
 at 143-144. The Court continued, writing that once filed with the clerk of the board of supervisors, the bill of exceptions "should have been filed at once [in circuit court] by the clerk of the board of supervisors."
 
 Id. See also
 

 Shannon Chair Co. v. City of Houston
 
 ,
 
 295 So.2d 753
 
 , 755 (Miss. 1974) (holding that a bill of exceptions not presented to the mayor within ten days of adjournment of the pertinent meeting was untimely and must be dismissed);
 
 Faison v. City of Indianola
 
 ,
 
 156 Miss. 872
 
 ,
 
 127 So. 558
 
 , 559 (1930) (bill of exceptions considered timely when presented to the board). Accordingly, as long as the bill is filed for consideration with the board within ten days, I would recommend the courts consider it to be timely. As was the practice when bills of exception were more commonly used, nothing would be filed with the circuit court until the clerk of the board fulfilled the duty of submitting the signed bill of exceptions to the circuit court. Although in our later cases, such as
 
 Lowndes County v. McClanahan
 
 ,
 
 161 So.3d 1052
 
 , 1055 (¶ 13) (Miss. 2015), we wrote in passing that a bill of exceptions is filed in the circuit court, I have been unable to find a case in which we considered the issue and overruled the established practice of filing the bill with the clerk of the board first, with the clerk to follow the statutory directive of being the person responsible for filing the bill with the circuit court.
 

 ¶ 84. If the aggrieved party and the board dispute the accuracy of the record and for that reason or any other the president of the board refuses to sign the bill of exceptions as required by the statute, then the aggrieved party can, as was the practice, file a petition for mandamus with the circuit court. The circuit court is best equipped to decide and create a record of such disputes. The circuit court likewise is equipped to consider whether other imperfections in the bill of exceptions render the record before it insufficient to consider the matters excepted.
 

 However, if we are to return to the historical practice surrounding the bill of exceptions outlined above, some work must be done. In
 
 Bowen v. DeSoto County Board of Supervisors
 
 ,
 
 852 So.2d 21
 
 (Miss. 2003), the person aggrieved by the DeSoto County Board of Supervisors' decision did not, in fact, file a proposed bill of exceptions with the board within ten days, as was the historical practice. Rather, the aggrieved party, John Bowen, filed a notice of appeal with the circuit court within the first ten days.
 

 Id.
 

 at 22
 
 (¶ 1). The circuit court dismissed the notice of appeal because Bowen never filed a bill of exceptions.
 

 Id.
 

 The
 
 Bo wen
 
 Cour t hel d that the bill of exceptions merely functioned as a vehicle for establishing the record on appeal and was not a requirement for the circuit court to hear Bowen's appeal from the board of supervisors.
 

 Id.
 

 at 24
 
 (¶ 9). The Court wrote, "In the case sub judice, Bowen properly and timely filed a notice of appeal. We find that sufficient to vest jurisdiction."
 

 Id.
 

 The
 
 Bo wen
 
 Cour t's j udgment cannot coexist with Section 156 of the Constitution, which mandates that circuit court appellate jurisdiction must be "prescribed by law," considering that the law which prescribes circuit court jurisdiction in appeals from county and municipal boards mandates-and for decades has been held to mandate-the use of bills of exceptions to do so. Notably, the
 
 Bowen
 
 Cour t rea ched its holding without overruling or discussing the myriad earlier cases that recognized the mandatory nature of the bill of exceptions-including,
 
 inter alia
 
 ,
 
 Varia
 
 . Ind eed ( and confusingly), after the Court handed down
 
 Bowen
 
 , the bill of exceptions was affirmed as a jurisdictional requirement in the later case of
 
 McIntosh v. Amacker
 
 ,
 
 592 So.2d 525
 
 , 527 (Miss. 1991).
 
 Bowen
 
 resu lted in the convoluted practice-foreign to the long, pre-
 
 Bowen
 
 hist ory o f the bill of exceptions-of aggrieved parties filing both a bill of exceptions with the clerk of the board and a notice of appeal in the circuit court.
 
 See, e.g.,
 

 Ball v. Mayor and Bd. of Aldermen of City of Natchez
 
 ,
 
 983 So.2d 295
 
 , 302 (¶ 23) (Miss. 2008) ;
 
 Grist v. Farese
 
 ,
 
 860 So.2d 1182
 
 (Miss. 2003). Today we should take advantage of the opportunity to overrule
 
 Bowen
 
 , whi ch wo uld allow clarification and simplification of the bill of exceptions process by returning to that which the statute actually provides, which is the filing of a bill of exceptions with the clerk of the appropriate county or municipal board.
 

 VI. Conclusion
 

 ¶ 86. Resolving doubts in favor of the constitutionality of Section 11-51-75 leads to the conclusion that the Legislature did not intend the signature requirement to be a constitutional prerequisite. Therefore, it cannot be unconstitutional as such.
 

 ¶ 87. Further, I would clarify that, although the bill of exceptions itself is a jurisdictional requirement for the circuit court to hear an appeal via Section 11-51-75, imperfections in it go to the adequacy of the record rather than the authority of the court to hear the appeal.
 

 ¶ 88. Finally, I would overrule the
 
 Bowen
 
 Court's holding that the bill of exceptions is nothing more than an optional vehicle for transmitting the record to the circuit court and that some other filing, such as a notice of appeal, can suffice to confer jurisdiction there. In doing so, I would take the opportunity to clarify bill of exceptions practice as outlined above.
 

 ¶ 89. In the case
 
 sub judice
 
 , the Hollywood Casino did not follow the statutory mechanism. Rather than filing its bill of exceptions with the Tunica County Board of Supervisors, it filed the bill of exceptions and a notice of appeal directly in the circuit court. Going forward and in light of the language of Section 11-51-75 and the
 clarifications I propose above, Hollywood's bill of exceptions well may be untimely for failure to submit it timely to the Tunica County Board of Supervisors. However, given the confusion engendered by
 
 Bowen
 
 , I would be loathe to hold so in today's case. In fact, as Tunica does not appear to attack the completeness of the record contained in the bill of exceptions, as was the case in
 
 Gill v. Woods
 
 ,
 
 226 So.2d 912
 
 (Miss. 1969), I would hold that the trial court committed no error in preceding. In short, I, too, would affirm.
 

 WALLER, C.J., RANDOLPH AND KITCHENS, P.JJ., AND MAXWELL, J., JOIN THIS OPINION. CHAMBERLIN, J., JOINS IN PART.
 

 With the celebration during the current year of Mississippi's bicentennial, the plural becomes appropriate.