# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2016-CA-00678-SCT

*CITY OF JACKSON, MISSISSIPPI*

*v.*

*BEN ALLEN, INDIVIDUALLY AND IN HIS CAPACITY AS PRESIDENT OF DOWNTOWN JACKSON PARTNERS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/26/2016 |
| TRIAL JUDGE: | HON. WILLIAM A. GOWAN, JR. |
| TRIAL COURT ATTORNEYS: | SAMUEL L. BEGLEY |
| | JAMES RICHARD DAVIS, JR. |
| | MONICA DAVIS JOINER |
| | GAIL WRIGHT LOWERY |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JAMES RICHARD DAVIS, JR. |
| | MONICA DAVIS JOINER |
| ATTORNEY FOR APPELLEE: | SAMUEL L. BEGLEY |
| NATURE OF THE CASE: | CIVIL - REAL PROPERTY |
| DISPOSITION: | AFFIRMED - 02/01/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     The Jackson City Council passed an ordinance rezoning an approximately .3 acre parcel of property located at 530 South State Street, Jackson, Mississippi, 39201. Ben Allen, individually and in his capacity as President of Downtown Jackson Partners, Inc., filed a bill of exceptions in the Circuit Court of Hinds County, seeking reversal of the City Council's

decision to rezone the property. The circuit court reversed the Jackson City Council's decision. The City appeals from the circuit court's order raising the following issues:

I. Whether the trial court had jurisdiction to overrule the City Council's decision because no signed bill of exceptions had been filed as required by Mississippi Code Section 11-51-75.

II. Whether the trial court erred by refusing to dismiss the case for Allen's lack of standing.

III. Whether the owner and lessor of the property are necessary parties to the appeal on the basis of basic due process requirements.

## FACTUAL BACKGROUND

¶2. On July 2, 2015, Marcellus Hogan filed an application requesting that the subject property be rezoned from "OCGD (Old Capital Green) Sub District 2 to C-3 (General) Commercial District" for the purpose of allowing the operation of a used auto sales business on the premises. The application for rezoning was signed by Marcellus Hogan and the property owner, James L. Miles. The City refers to Marcellus Hogan as both the lessor and lessee of the property.[1] Maurice Hogan was listed on the application as an individual who would be representing the applicant, Marcellus Hogan.

¶3. On July 27, 2015, the City zoning administrator prepared a report to the City of Jackson Planning Board concerning the property. The zoning administrator recommended denying the rezoning request. On August 25, 2015, the Planning Board held a meeting and considered Marcellus Hogan's request to rezone the property. Marcellus Hogan, James Miles, and Maurice Hogan spoke in support of the rezoning request. The Planning Board

---

[1] For purposes of clarity, the Court refers to Marcellus Hogan as the lessor of the property because it is not apparent whether he was a prospective lessor or lessee.

2

denied the rezoning request in a vote of nine to two, with four members absent. The Planning Board found that the criteria for granting a rezoning had not been met. On September 4, 2015, James Miles submitted a written notice of appeal requesting that the City Council review the Planning Board's decision.

¶4. On September 21, 2015, the City Council convened for a meeting and held a hearing to consider the rezoning request. The Planning Board staff appeared and presented facts and findings to the City Council. The Planning Board staff recommended that the City Council deny the rezoning request. No one appeared or spoke in favor of the request to rezone the property. At the conclusion of the hearing, the City granted the rezoning request, finding that the criteria for granting a rezoning had been met. Four of the seven City Council members were present at the hearing. The City Council voted to grant the rezoning request in a vote of two to one, with one member abstaining. The city councilman who voted to abstain due to a conflict of interest stated that he would remain in the meeting so that, in his opinion, there would be a quorum. The circuit court took judicial notice of the City Council hearing and minutes. There is no dispute about what transpired at the City Council meeting, namely, the number of City Council members who were present and voted.

¶5. On October 1, 2015, Ben Allen appeared for the first time by filing a notice of appeal and a bill of exceptions under Mississippi Code Section 11-51-75 in the circuit court. In Allen's bill of exceptions, he stated that he had standing to file a bill of exceptions as a resident of the City of Jackson and President of Downtown Jackson Partners. Allen stated that Downtown Jackson Partners is a Mississippi nonprofit corporation designated as the

3

district management group for the Downtown Jackson Business Improvement District under the district plan adopted by the Downtown Jackson Business Improvement District property owners pursuant to the Business Improvement District Act, Mississippi Code Section 21-43-101 through 21-43-133. Allen also stated that the subject property is located in the Downtown Jackson Business Improvement District and that Downtown Jackson Partners has been afforded certain responsibilities regarding the Old Capital Green Mixed Use District in which the property is situated.

¶6. Allen claimed that neither the applicant nor the property owner appeared at the hearing. Allen also claimed that no one appeared or spoke in favor of the application for rezoning at the hearing. Allen requested that the circuit court reverse the City Council's rezoning decision because there was not substantial evidence in the record to support the decision; the decision was arbitrary and capricious; an insufficient number of council members lawfully participated to constitute a quorum; the application was unlawful because it was not filed in the name of the landowner. Allen alleged the same assignments of error in his notice of appeal.

¶7. The bill of exceptions contained an unsigned certificate of the mayor. On December 11, 2015, Allen filed a motion to stay implementation of the rezoning ordinance. Allen attached what constitutes a significant portion of the record on appeal to the motion, which includes the initial application for rezoning; zoning administrator's report; warranty deed; minutes of the Planning Board meeting; a notice of the Planning Board decision; James

4

Miles's written appeal of the Planning Board's decision; and a notice of the City Council decision.

¶8.    On January 23, 2016, Allen filed a motion to compel the City to sign an amended bill of exceptions and to compile the record due to an apparent disagreement regarding the substance of the bill of exceptions and the record.  Alternatively, Allen argued that "if the City [did] not agree with the facts set forth in the [a]mended [b]ill of [e]xceptions, [it should] point out needed corrections and either have the City Council President sign the bill as corrected, or tender the corrections to [Allen] for submission of another amended bill."  Allen relied on the requirements set out in Section 11-51-75 and *Wilkinson County Board of Supervisors v. Quality Farms, Inc.*, 767 So. 2d 1007 (Miss. 2000), in support of his motion.

¶9.    Allen claimed that "[s]ince October 22, 2015, the undersigned attorney has communicated with the City Attorney's office seeking to cause the City to act on the bill of exceptions, either by signing it as is or correcting it, and to prepare the record."  Allen attached a proposed amended bill of exceptions and proposed certificate of the President of the City Council to the motion.

¶10.    According to Allen's motion to compel, the City requested Allen to supply an outline of the proposed record to be compiled by the City to be used in the appeal.  In response, Allen incorporated an "outline of the proposed record" (list of exhibits) in his amended bill of exceptions.  The primary difference between the initial bill of exceptions and the amended bill of exceptions was the addition of the exhibit list.  Also, the initial bill of exceptions identified the mayor as the official authorized to sign the bill of exceptions

5

while the amended bill of exceptions identified the City Council president as the official authorized to sign. The amended bill of exceptions also contained an added request for the City to produce all documents, ordinances, resolutions, and transcripts related to the matter.

¶11. For reasons not apparent in the record, the amended bill of exceptions was never signed by the City Council president. The City never responded to Allen's motion to compel. Instead, on January 29, 2016, the City filed a motion to dismiss Allen's appeal. The City argued that Allen lacked standing and the case should be dismissed for failure to join necessary and indispensable parties under Rule 19(a)(2) of the Mississippi Rules of Civil Procedure. The City argued that the property owner and lessor were necessary and indispensable parties. The City also argued that Allen lacked standing to file a bill of exceptions as the Chief Executive Officer of Downtown Jackson Partners. The City argued that Downtown Jackson Partners was not a "person aggrieved" under Section 11-51-75 because it does not own, nor does it have a interest in, property which is or may be affected by the decision of the City Council to rezone the subject property.

¶12. On February 12, 2016, Allen filed a response to the City's motion to dismiss. Allen attached an affidavit in support of his position that he had standing to file a bill of exceptions. In the affidavit, Allen explained his role with Downtown Jackson Partners. Allen also explained Downtown Jackson Partners's role and interest related to the property at issue. On February 24, 2016, Allen filed a supplemental affidavit stating that he is a resident citizen of Jackson. Allen also stated that he owns property in Jackson. He further stated that he is a beneficiary of a trust that owns property in Jackson.

6

¶13. On February 16, 2016, Allen filed a notice of hearing on the motion to stay; motion to compel and to compile the record; and the City's motion to dismiss. The hearing was scheduled for April 20, 2016. The record on appeal contains no transcript of the scheduled hearing and no indication that a hearing actually was held.

*The Circuit Court's Opinion and Order*

¶14. On April 26, 2016, the circuit court entered an opinion and order. The circuit court denied the City's motion to dismiss. The circuit court also found that Allen had standing to appeal as the President of Downtown Jackson Partners, representing the interests of the property owners in the Downtown Jackson Business Improvement District. The circuit court recognized that Subsection 708.03.04 of the Old Capitol Green Mixed Use District section of the City's zoning ordinance provides a direct role for Downtown Jackson Partners in regulating the development of the district. The circuit court also found that successful applicants for rezoning the property were not necessary, indispensable or proper parties, to be aligned as co-appellees with the City.

¶15. The circuit court took judicial notice of the City Council's meeting on September 21, 2015, based on the minutes and video of the meeting available on the City's website. The circuit court found that the vote of two to one, with one abstaining from voting, did not constitute a majority of the quorum under Mississippi Code Section 21-8-11. As such, the circuit court reversed the decision of the City Council and found that the minutes of the council meeting should have reflected that the city councilman's motion to grant the rezoning

7

request failed for lack of majority. The circuit court directed that its opinion and order be supplied to the City Council at the next regular meeting.

¶16. On May 9, 2016, the City filed a notice of appeal. The City did not address whether the vote constituted a majority of a quorum. Although the circuit court based its order to reverse the City Council's decision on the lack of a majority vote of a quorum, the City limits its argument on appeal to (1) whether the circuit court had jurisdiction; (2) whether Allen has standing; and (3) whether the property owner and lessor are necessary and indispensable parties.

**STANDARD OF REVIEW**

¶17. The Court reviews jurisdictional issues de novo. *Horne v. Mobile Area Water & Sewer Sys*., 897 So. 2d 972, 975 (¶ 7) (Miss. 2004). "For questions of law, a municipal board's decision is reviewed de novo." *Nelson v. City of Horn Lake ex rel. Bd. of Aldermen*, 968 So. 2d 938, 942 (¶ 10) (Miss. 2007). "A de novo standard is also applied to issues of statutory interpretation." *Id*.

¶18. Because the circuit court sits as an appellate court in zoning cases, we must directly examine the City's decisions. *City of Ocean Springs v. Psycamore, LLC*, 124 So. 3d 658, 661 (¶ 14) (Miss. 2013). Zoning decisions will not be set aside unless clearly shown to be arbitrary, capricious, discriminatory, illegal, or without substantial evidence. *Drews v. City of Hattiesburg*, 904 So. 2d 138, 140 (¶ 5) (Miss. 2005).

¶19. The issue of standing is a question of law, which the Court reviews de novo. *Bennett v. Bd. of Supervisors of Pearl River Cty*., 987 So. 2d 984, 986 (¶ 7) (Miss. 2008). Our

8

standard of review for joinder issues is abuse of discretion. *Illinois Cent. R.R. Co. v. Gregory*, 912 So. 2d 829, 833 (¶ 5) (Miss. 2005).

## DISCUSSION

**I.     Whether the circuit court had jurisdiction.**

¶20.    It is undisputed that counsel for Allen filed an unsigned bill of exceptions in the circuit court. It also is undisputed that counsel for Allen presented a bill of exceptions and amended bill of exceptions to the City to have the president of the municipal authority sign them, but the City, for whatever reason, refused.

¶21.    On appeal, the City argues for the first time that the circuit court lacked subject matter jurisdiction because "no proper and signed" bill of exceptions was filed as required by Section 11-51-75. The City claims that Allen's failure to file a valid bill of exceptions deprived the circuit court of subject matter jurisdiction. Although the City did not raise the argument that the circuit court lacked jurisdiction due to an improper and unsigned bill of exceptions in the circuit court, "[t]he question of subject-matter jurisdiction may be raised at any time." *B.A.D. v. Finnegan*, 82 So. 3d 608, 614 (¶ 23) (Miss. 2012).

¶22.    During oral argument of the present matter, the parties argued the issue of whether certain requirements contained in Mississippi Code Section 11-51-75 were jurisdictional or procedural. The Court ordered supplemental briefing addressing the constitutionality of Section 11-51-75. The Court directed the parties to address the following issues:

> (1) Whether the requirements that follow Section 11-51-75's language, "may appeal within ten (10) days from the date of adjournment at which session the board of supervisors or municipal authorities rendered such judgment or decision," are jurisdictional or procedural.

9

(2) Whether the signature of the president of the municipal authorities on the bill of exceptions as required by Section 11-51-75 is jurisdictional or procedural.

(3) If the Court determines that the statute or its requirements are procedural, how should the Court proceed in light of the Court's decision in *Newell v. State*, 308 So. 2d 71 (Miss. 1975), and its progeny?

¶23. The Court also notified and afforded the Attorney General of Mississippi an opportunity to file a brief addressing the issues because the constitutionality of Section 11-51-75 is at issue. The parties and the Attorney General submitted briefs addressing the issues.

¶24. Because the three issues regarding the constitutionality of Section 11-51-75 are intertwined, we take the opportunity to address the three issues as a whole in single, comprehensive fashion, beginning with the origin of the bill of exceptions in our State. The need for a comprehensive analysis seems necessary in light of the uncertainty among practitioners who regularly use the bill of exceptions as part of their practice and due to the Court's less than clear precedent. Moreover, an identical issue relating to the signature requirement of bills of exceptions currently is pending before the Court in *Tunica Board of Supervisors v. HWCC-Tunica, LLC*, No. 2015-CA-01645-SCT.

¶25. The bill of exceptions is a vehicle for appeals that existed at the time Mississippi became a state. It was the means for appealing lower court decisions for more than half of Mississippi's 200-year history. It is time to revisit some of the decisions that have obscured what was once an oft-used and well-understood vehicle for appeals and give clarity to those whose practice of law and work on the bench requires them to work with the bill of

10

exceptions. In doing so, we take the opportunity to return to the straightforward process as it was used for much of our history.

### A. Three primary legal principles must be remembered in analyzing the signature requirement.

¶26. Three primary legal principles must be remembered and emphasized throughout the instant analysis of the signature requirement. First, the Constitution of 1890 gives the Legislature authority to set the appellate jurisdiction of the circuit courts. Second, the question before the Court in the case *sub judice* is one of interpreting legislative intent. Third, before declaring a statute unconstitutional, we must be satisfied that it is unconstitutional beyond a reasonable doubt.

¶27. Article 6, Section 156 of the Mississippi Constitution of 1890 establishes jurisdiction in the circuit courts as follows:

> The circuit court shall have original jurisdiction in all matters civil and criminal in this state not vested by this Constitution in some other court, and *such appellate jurisdiction as shall be prescribed by law.*

(Emphasis added.) The last nine words of Section 156 authorize the Legislature to grant and define appellate jurisdiction to the circuit courts. *Johnson v. Sysco Food Servs.*, 86 So. 3d 242, 245 (¶ 13) n.16 (Miss. 2012); *Knox v. L.N. Dantzler Lumber Co.*, 148 Miss. 834, 114 So. 873 (1927). The Legislature conferred appellate jurisdiction upon the circuit court in Section 11-51-75 (and its statutory ancestors).

¶28. Because the Legislature establishes circuit court appellate jurisdiction, and does so in Section 11-51-75 by authorizing appeal from a county or municipal board decision via a bill of exceptions, the question of whether the signature requirement is jurisdictional is one of

11

statutory interpretation. Of course, our goal when interpreting statutes is to divine the "true meaning of the Legislature." ***Scaggs v. GPCH-GP, Inc.***, 931 So. 2d 1274, 1276 (¶ 10) (Miss. 2006) (quoting ***Stockstill v. State***, 854 So. 2d 1017, 1022-23 (¶ 13) (Miss. 2003)). "Our role is to determine the legislative intent and constitutionality of acts passed by the Legislature, and if we interpret a statute contrary to the intent or will of the Legislature, that body has the absolute authority to change the statute to suit its will." ***Stockstill v. State***, 854 So. 2d 1017, 1023 (¶ 13) (Miss. 2003).

¶29. The first two of the three primary principles that should guide the Court's holdings today lend themselves to a simple conclusion. Before we can declare the signature requirement found in Section 11-51-75 to be unconstitutional as a jurisdictional prerequisite, we must first determine whether the Legislature intended it to be a jurisdictional prerequisite at all.

¶30. There exists a strong presumption that a statute is constitutional, and we will not declare it to be otherwise unless it is proven unconstitutional beyond a reasonable doubt. ***Atwood v. State***, 183 So. 3d 843, 845 (¶ 5) (Miss. 2016) (citing ***Johnson v. Sysco Food Servs.***, 86 So. 3d 242, 243-44 (Miss. 2012)); *see also* ***Wilson v. State***, 194 So. 3d 855, 868 (Miss. 2016) ("The Court may be able to overrule its own cases, but absent a showing beyond a reasonable doubt that a statute is unconstitutional, the Court may not overrule statutes."). We resolve all doubts in favor of the statute's constitutionality. ***Atwood***, 183 So. 3d 843, 845.

¶31. As more fully discussed below, a bill of exceptions is, in and of itself, a jurisdictional requirement should an aggrieved party wish to appeal a decision of a county or municipal board. However, the long history of our opinions in bill of exceptions cases convinces us that a perfect bill of exceptions is not a jurisdictional requirement and, more narrowly and pertinent in the case sub judice, the signature of the president of the board is not a jurisdictional requirement. Given that we must resolve doubts in favor of constitutionality, we hold that Section 11-51-75 does not establish the signature requirement as a jurisdictional prerequisite; accordingly, as it does not exist in the statute, it cannot be an unconstitutional infringement upon the procedural prerogative of the Court, because the statute neither mandates nor forbids that the courts do anything whatsoever.

¶32. From Mississippi's very beginning, the bill of exceptions provided the vehicle for appealing lower court decisions to the Mississippi Supreme Court. *See, e.g.,* **Lewis v. Sulcer**, 1 Miss. 21 (1818); **Hackler's Heirs v. Cabel**, 1 Miss. 91 (1921). It was, simply, "a written statement of objections to the decision of the court upon a point of law, made by a party to the cause, and properly certified by the judge or court who made the decision." **Williams v. Ramsey**, 52 Miss. 851, 856 (1876). It purposed "to put the decision objected to upon record, for the information of the court having cognizance of the cause in error." **Id.**

¶33. Prior to the creation of the bill of exceptions in England by the Statute of Westminster, the record did not contain the evidence and interlocutory rulings of the lower court. **Williams**, 52 Miss. at 865; *see also* 4 C.J.S. *Appeal and Error* § 577 (2017). The statute required trial judges to sign the bill and assured that the exceptions would be in the record.

13

*Id.* Mississippi had a statute that provided that, should the trial judge refuse to sign the bill, two attorneys present for the proceedings could do so. *Id.* at 857-858. In the alternative, the appellant could petition the Supreme Court for mandamus to compel the trial judge to sign the bill. *Ex parte Robson*, 1 Miss. 412 (1831). The statutes providing for the bill of exceptions as a means to appeal a criminal matter remain today. Miss. Code Ann. §§ 99-17-39 through 99-17-45 (Rev. 2015).

¶34. The appealing party presented the bill to the trial court first rather than to the reviewing court. *Williams*, 52 Miss. at 857-858; *Cabel*, 1 Miss. at 92; *Lewis*, 1 Miss. at 22. The procedure is in that regard similar to our modern procedure of filing a notice of appeal in the trial court rather than in the appellate courts. Miss. R. App. P. 4(a). To timely file the bill of exceptions, the appellant needed only place the bill in the hands of the clerk whose task it later would be to file the bill with the reviewing court. 4 C.J.S. *Appeal and Error* § 587 (2017). The rights of the appellant would not then be lost should the trial judge delay in signing the bill. 4 C.J.S. *Appeal and Error* § 588 (2017).

¶35. After presentment of the bill to the trial court, the trial court and the appellant would reach agreement on its contents in a process known as "settlement." 4 C.J.S. *Appeal and Error* § 585 (2017). After settlement, the trial court would send the bill to the appellate court. The Supreme Court, or High Court of Errors and Appeals, would be restrained by the bill of exceptions and, as in today's record on appeal, could not look outside the matters contained in the bill of exceptions when considering the appeal. *Vaughan v. State*, 11 Miss. 553, 554, 1 Morr. St. Cas. 245, 3 S. & M. 553 (1844).

14

¶36.     When the Mississippi Legislature adopted the bill of exceptions as a vehicle for appealing the decisions of county and municipal boards, the procedure for its use was clear because it had long been used to appeal lower court decisions, as discussed above.  Of course, using the bill of exceptions to appeal a decision of a governing body changed the dynamic in that, rather than being an appeal between two adversaries as to which a neutral judge would verify the record, the governing board was opposed to the party seeking the appeal.  The resulting tension leads us to where we are today, with presidents of boards of supervisors and mayors of towns refusing, often on the advice of counsel, to sign the bill of exceptions.  Nevertheless, the bill of exceptions was a workable, and really quite simple, mechanism for appeal – even in the county or municipal board context.

¶37.     The first expansion of the bill of exceptions beyond courtroom appeals occurred when the Mississippi Legislature passed a statute that provided that "it shall and may be lawful for all persons who feel themselves aggrieved by the judgment of the board of police of the county, to appeal by bills of exception or *certiorari* to the Circuit Court of his county." *Yalobusha Cty. v. Carby*, 11 Miss. 529, 546 (1844), *overruled on other grounds by Dismukes v. Stokes*, 41 Miss. 430, 435 (1867).  The board of police was empowered to hear audit claims against the county and was otherwise the forerunner of the modern county board of supervisors, *Carby*, 11 Miss. at 542-543 (Brief of Defendant in Error).  The statute allowing appeals via a bill of exceptions closely resembled the modern counterpart at issue today, but it also allowed appeal via a writ of *certiorari* to the circuit court. *Id.* at 546.  In *Board of Police of Yalabusha* [sic] *County v. Ray*, 20 Miss. 342, 12 S. & M. 342 (1849), the

Court noted that an appeal from a decision of the board of police first would be filed with the board and would be timely if filed there within the time set by statute.

¶38. Rather than filing anything with the circuit court immediately, the "appeal" was first filed with the board, much like a notice of appeal is filed with the trial court – not the appellate court – today. *See Faison v. City of Indianola*, 156 Miss. 872, 127 So. 558, 559 (1930); *Spencer v. Washington Cty.*, 92 Miss. 230, 45 So. 863 (1908). Then, again similar to a direct appeal, the bill of exceptions was prepared, or "settled," through the joint effort of the aggrieved party and the board. Finally, the clerk of the board forwarded the completed, signed bill of exceptions to the circuit court. *See Spencer*, 92 Miss. at 230, 45 So. at 864.

> **B. In requiring the president of the municipal authority to sign the bill of exceptions, the Legislature provided a means for verifying the record, but did not establish a requirement that, if not met, automatically robbed the circuit court of the authority to hear the appeal.**

¶39. Turning to the signature requirement in the context of appeals from boards of supervisors and aldermen, the Court through the centuries[2] has both considered unsigned bills of exceptions and refused to consider them. It is clear that the bill of exceptions itself is a requirement, and that the parties cannot waive it. *McIntosh v. Amacker*, 592 So. 2d 525, 527 (Miss. 1991) ("The bill of exceptions required by the general statute is necessary to vest the circuit court with appellate jurisdiction."); *Cox v. Bd. of Supervisors of Madison Cty.*, 290 So. 2d 629 (Miss. 1974); *Bridges v. Clay Cty. Supervisors*, 57 Miss. 252 (1879). However,

---

[2]With the celebration during the current year of Mississippi's bicentennial, the plural becomes appropriate.

imperfect bills of exception did not equate automatically to a complete absence of jurisdiction. Rather, the imperfections spoke to the absence of an adequate record. *Michael v. West Hatchie Drainage Dist.*, 135 Miss. 798, 100 So. 392, 393 (1924); *see also Adcock v. Bd. of Supervisors of Winston Cty.*, 191 Miss. 379, 2 So. 2d 556 (1941); *Bussey v. City Council of City of Greenville*, 102 So. 182 (Miss. 1924) (suggesting that failure to include complete bill of exceptions defeated attempted appeal because it left the reviewing court without a record).

¶40. Without question, the bill of exceptions acted to preserve the record of proceedings before the county or municipal board, *see Hall v. Franklin County*, 184 Miss. 77, 185 So. 591, 595 (1939), and like the signature of the judge in cases at law appealed via the bill of exceptions, the signature of the president of the board certified the accuracy of the record. *Jones v. Bd. of Supervisors of Newton Cty.*, 110 Miss. 328, 70 So. 404 (1915); *Williams v. Bd. of Supervisors of Rankin Cty.*, 109 Miss. 278, 68 So. 249 (1915). The refusal to consider unsigned bills of exceptions was not based upon the idea that the appellate court had not the power, or jurisdiction, to hear them but, rather, an unsigned bill of exceptions could not be considered to fulfill its purpose of providing a reliable record of the proceedings below.

¶41. In *Graves v. Monet*, 15 Miss. 45, 7 S. & M. 45 (1846), for example, the High Court of Errors and Appeals refused to consider an issue on appeal raised in an unsigned bill of exceptions. In providing the reason, the Court wrote, "[W]e must be controlled by the record, and are therefore compelled to disregard the first bill of exceptions." *Id.* at 47.

17

Although in ***Roach v. Tallahatchie County***, 78 Miss. 303, 29 So. 93 (1901), the Court affirmed the circuit court's dismissal of a bill of exceptions because the president of the board of supervisors did not sign it, nothing in the one-paragraph opinion suggests that it departed from the long-established law that the signature was required to verify the record rather than give power to the court to hear the matter.

¶42.    ***Polk v. City of Hattiesburg***, 109 Miss. 872, 69 So. 675 (1915), best demonstrates that the absence of the signature of the president of the board or mayor from the bill of exceptions does not deprive the circuit court of the power, or jurisdiction, to review the case. In ***Polk***, the City of Hattiesburg closed a public alley, and a citizen of the city aggrieved by the decision sought to appeal the decision via a bill of exceptions. ***Id.*** at 675-76.  On the day of the decision, the aggrieved citizen presented his bill of exceptions to the mayor and commissioners. ***Id.*** at 676.  The record showed that the mayor and commissioners reviewed the bill and agreed it was a correct statement of the facts and decision.  The next day, the mayor stated that the bill of exceptions was correct, but he refused to sign it on advice of the city attorney. ***Id.***  The circuit court dismissed the bill of exceptions due to the absence of the signature, but the Supreme Court reversed. ***Id.***

> When a bill of exceptions embodying the facts and decisions is duly presented, it is made the duty of the presiding officer to sign the same.  He has no discretion in the matter.  If it is admitted that the bill of exceptions is a correct memorial of the facts and decisions, can the circuit court dispense with the signature of the mayor, and inquire into the merits of the appeal, after having first ascertained that the bill of exceptions stated the facts and decisions?  We believe that ***McGee v. Beall****,* 63 Miss. 457, and ***Robinson v. Mhoon***, 68 Miss. 713, 9 South. 887, answer this query in the affirmative.  The appellant in this case did all that was in his power to do "by preparing and tendering a proper

18

bill to the proper officer," and he "ought not to suffer by reason of his [the officer's] neglect to promptly sign the same."

*Polk*, 69 So. at 676. Once again, the Court made it clear that the purpose of the signature was not to confer jurisdiction, but to affirm the correctness of the record. Because in *Polk*, the mayor and board agreed the bill was accurate, the circuit court should have reached the merits. Even the *Polk* dissent phrased its disagreement in terms of who had the authority and duty to certify the record rather than whether the signature conveyed jurisdiction upon the circuit court. *Polk*, 69 So. at 677-678 ("Since the Legislature has not conferred upon the circuit courts power to settle bills of exception to the action of boards of supervisors and municipal authorities, it necessarily follows that such courts have no right so to do.") (Smith, J., dissenting).

¶43. *Polk* can be contrasted with *Wilkinson County v. Tillery*, 122 Miss. 515, 84 So. 465 (1920). There, an owner of a cow, Tillery, submitted a claim to the county for the value of the cow after it was killed in a dipping process ordered by the county. *Id.* at 465. The county board of supervisors refused to pay. *Id.* Tillery filed a petition for appeal with the clerk of the board and requested the clerk "to make and file transcript of my claim and order of the board, returnable to the next session of the circuit court of said county." *Id.* The clerk of the board sent the circuit court a record containing Tillery's written claim and the order of the board of supervisors denying it. *Id.* "Some months" later, Tillery filed, in circuit court, a petition for *certiorari* seeking to require the clerk of the board to send the court an unsigned bill of exceptions that Tillery maintained was correct. *Id.* However, while the county admitted it had not signed the bill of exceptions, the board disputed its accuracy. *Id.* The

19

circuit court granted the writ of *certiorari* and, when the unsigned bill of exceptions arrived, overruled a motion by the county to quash it. *Id.* The circuit court rendered a verdict on the bill of exceptions in favor of Tillery. *Id.*

¶44. On appeal by the county, the Supreme Court of Mississippi held that the circuit court erred in issuing *certiorari* and in refusing to quash the bill of exceptions. *Id.* at 466. Contrasting the case to *Polk*, the *Tillery* Court wrote, "Since the record fails to show that this unsigned bill of exceptions was in point of fact agreed to as being true and correct, then there is no bill of exceptions embodying the proceedings had before the board of supervisors." *Id.* The issue, again, was the reliability of the record, not the power of the circuit court to hear an appeal.

> **C. Over the last half-century, the Court has held that circuit courts lack jurisdiction to hear cases that are fatally flawed for lack of a record, but in reality the flaw in the record did not remove the fundamental authority of the court to preside over the bill of exceptions appeal.**

¶45. The Court lost sight of the distinction between its jurisdiction, or power to hear a case, and the effect of an insufficient record on the merits of an appeal via bill of exceptions in *Stewart v. City of Pascagoula*, 206 So. 2d 325 (Miss. 1968). There, the City of Pascagoula authorized a contract with Jackson County assuming the county's water and sewer bonds. *Id.* at 326. Two aggrieved persons, Stewart and Brown, sought to appeal the decision via a bill of exceptions. *Id.* While signed by the mayor, *id.* at 327, the bill of exceptions did not include the contract at issue. *Id.* at 326. The *Stewart* Court wrote, "The authority and jurisdiction of the circuit court are thus limited and circumscribed by statute. As an appellate

court, it considers the case as presented by the bill of exceptions. It can not go outside the record as made in the bill of exceptions." In writing the quoted sentence, the Court, without citation to relevant authority, equated the usually-fatal flaw of an insufficient record with the authority of the circuit court to hear an appeal from a county or municipal board via a bill of exceptions. As shown above, it is true that the jurisdiction of the circuit court to hear appeals from county and municipal boards is set forth in the bill of exceptions statute. And it is true that the bill of exceptions sets forth the record that constrains the circuit court's review. However, it does not necessarily follow that the failure to provide an adequate record, fatal though it may be to the appeal, deprives the circuit court of the authority to hear the case. With respect, the *Stewart* Court jumped to its conclusion.

¶46.    In doing so, the *Stewart* Court misplaced reliance on two cases. The Court wrote, "This Court has held that a proper bill of exceptions on appeal is necessary to confer jurisdiction on the appellate court." In so writing, the Court relied on *McDonald v. Spence*, 179 Miss. 342, 174 So. 54 (1937), and *Richmond v. Enochs*, 109 Miss. 14, 67 So. 649 (1915). At issue in *McDonald* was the sufficiency of a bill of exceptions from chancery court to the Supreme Court. *McDonald*, 179 Miss. at 342, 174 So. at 54. The statute then authorizing appeals from chancery court via a bill of exceptions contained more, and more specific, requirements of the bill of exceptions than the statute at issue in *Stewart* and in today's case. *McDonald*, 179 Miss. at 324, 174 So. at 54. In *McDonald*, the chancellor did not sign the bill of exceptions but, rather, signed a statement regarding a "special bill of exceptions" which, in effect, directly disavowed that the purported bill of exceptions met the

21

statutory requirements. *Id.* In *Richmond*, the appellee moved to strike the transcript from the record. *Strickland*, 109 Miss. at 14, 67 So. at 649. The transcript at issue was submitted after the term of court ended to counsel for the appellant, who then delivered it to the attorney for the appellee, who refused to examine and correct it. *Id.* at 14, 650. Upon receiving the transcript back, counsel for the appellant filed it with the circuit clerk without providing it to the circuit judge. *Id.* The Supreme Court granted the motion to strike the transcript, *id.*, but nowhere did the *Richmond* Court discuss appellate jurisdiction or whether the improper transcript robbed it of jurisdiction otherwise to hear the appeal.

¶47. Undiscussed by the *Stewart* Court was the *Polk* Court's holding that the flaw in the bill of exceptions there – the absence of the required signature – was not fatal to the circuit court's exercise of jurisdiction over the matter. *Stewart* also contradicts the later case of *Yellow Cab Company of Biloxi v. City of Biloxi*, 372 So. 2d 1274 (Miss. 1979), in which the Court noted the omission from the bill of exceptions of briefs filed with the city but wrote, "Even though a bill of exceptions is defective, if the judgment is erroneous on its face, it will be reversed. . . ." *Id.* at 1277.

¶48. One year after *Stewart*, the Court decided *Weathersby v. City of Jackson*, 226 So. 2d 739 (Miss. 1969). There, J.L. Weathersby opposed a rezoning ordinance pending before the Jackson City Council. *Id.* at 739. After the city approved the ordinance, he appealed via a bill of exceptions. *Id.* The circuit court dismissed the bill of exceptions for the failure of Weathersby, *et al*., to include a copy of the ordinance. *Id.* at 740. In contrast to *Stewart*, in *Weathersby*, the Court reversed the circuit court's decision and held that enough information

22

existed elsewhere within the bill of exceptions to determine the content of the ordinance. *Id.* at 741. Once again, the Court utilized the term jurisdiction in its reasoning.

> We feel that the actual decision of the City Council was correctly and truthfully stated and embodied in the bill of exceptions. The highest officer of the City of Jackson approved the statement of the decision contained in the bill of exceptions. The bill of exceptions was sufficient to confer *jurisdiction* on the circuit court to hear and consider the appeal as an appellate court.

*Id.* (emphasis added).

¶49. There is a dissonant ring in the Court's use of the word jurisdiction in *Stewart* and *Weathersby*. Appellate jurisdiction in the circuit court is, by operation of the Mississippi Constitution, a matter of legislative prerogative. Miss. Const. art. 6, § 156. While Section 11-51-75 by its plain language requires that an appeal from a county or municipal board be accomplished via a bill of exceptions and that the appeal be made within ten days, it contains very little else that sets forth jurisdictional requirements. Notably absent from the statute – unlike the statute at issue in *McDonald* upon which the *Stewart* Court in part relied – are specific content requirements. Jurisdiction is defined as a "court's power to decide a case or issue a decree." *Jurisdiction*, Black's Law Dictionary (10th ed. 2014). When the *Stewart* and *Weathersby* Courts wrote in terms of jurisdiction, they misused the term. It is clear that failing to embody a sufficient record in the bill of exceptions can be fatal to the attempted appeal – as shown above, such has been the case since the first days of our State. Yet, in other cases, we have allowed appeals made via the bill of exceptions to proceed despite flaws. *Yellow Cab Company of Biloxi v. City of Biloxi*, 372 So. 2d 1274 (Miss. 1979). However, we clarify *Stewart* and *Weathersby* and make it clear that, fatal or not, an

insufficient record does not rob the circuit court of jurisdiction as the term is properly understood. Such clarification harmonizes our bill of exceptions jurisprudence of the second half of the twentieth century and today with that of Mississippi's first 133 years. Further, it allows flexibility to the circuit courts to consider whether, imperfections aside, the record presented by the bill of exceptions does provide sufficient information for review as happened in *Polk* and the possibility of which was recognized in *Yellow Cab*.

> **D. No good reason exists to believe the Legislature intended the signature of the president of the county or municipal board to confer jurisdiction on the circuit court.**

¶50. Moreover, the same conclusion applies to the signature requirement. As discussed above, nothing in the wording of the statute applies the signature requirement to the courts. By its plain language and as recognized in early cases, it sets a ministerial duty of the president of the underlying board. As demonstrated in *Polk*, the court did not consider the absence of a signature to be a jurisdictional bar. Later, in *Gill v. Woods*, 226 So. 2d 912 (Miss. 1969), the Court once again held that the circuit court must consider a bill of exceptions unsigned by the president of the Marshall County Board of Supervisors. More strikingly than in *Polk*, in which the board agreed that the bill of exceptions was accurate, the *Gill* Court reversed the circuit court's dismissal of an unsigned bill of exceptions where the record failed to show that the board or its president objected to the form and content of the bill of exceptions. *Gill*, 226 So. 2d at 915.

¶51. Even a case often cited for the proposition that the absence of the signature constitutes a jurisdictional bar, *City of Jackson v. Varia, Inc.*, 241 Miss. 705, 133 So. 2d 16 (1961),

24

does not so hold. Certainly, the *Varia* Court held that the circuit court had no jurisdiction. *Id.* at 707, 17. However, the failings of the aggrieved party were global, and the aggrieved party failed to comply "in any manner" with the bill of exceptions statute.

¶52. It is one thing to conclude that a matter presented to a court is fatally defective, such as when a complaint fails to state a viable claim for relief and is dismissed pursuant to Rule 12(b)(6) of the Mississippi Rules of Civil Procedure or, more aptly, when an appellate court refuses to consider an assignment of error because the appellant fails to present a sufficient record. It is quite another to conclude that a court has no power or jurisdiction to entertain a matter before it. In light of the foregoing authorities setting forth the history of the uses of the bill of exceptions as a vehicle for appeals first from trial courts and later, by legislative expansion, from county and municipal boards, we hold that the failure to present a bill of exceptions signed by the president of the board falls into the former category rather than the latter. If the absence of the signature were an absolute procedural bar, then the *Polk* court would not have allowed the matter before it to proceed in the absence of the signature, and the *Tillery* Court would not have bothered pointing out the disagreement of the board with Tillery regarding the accuracy of the bill of exceptions at issue there.

¶53. Because we are unconvinced the Legislature never intended the signature requirement to be a jurisdictional prerequisite, and given the three operating principles set forth at the beginning of the instant opinion, we decline to find that the pertinent part of Section 11-51-75 is unconstitutional.

25

**E.**     **The Court takes the present opportunity to realign bill of exceptions practice with the language of the statute and the correct, historical practice of appeals from county and municipal boards.**

¶54.   Resolving doubts in favor of the constitutionality of Section 11-51-75 leads to the conclusion – backed by several cases – that the Legislature did not intend the signature requirement to be a constitutional prerequisite.  Therefore, it cannot be unconstitutional as such.  Further, we clarify that, although the bill of exceptions itself is a jurisdictional requirement for the circuit court to hear an appeal via Section 11-51-75, imperfections in it go to the adequacy of the record to decide the excepted issues rather than the authority of the court to hear the appeal.

¶55.   Finally, we overrule the Court's holding in *Bowen v. DeSoto County Board of Supervisors*, 852 So. 2d 21, 24 (¶ 9) (Miss. 2003), that the bill of exceptions is nothing more than an optional vehicle for transmitting the record to the circuit court and that some other filing, such as a notice of appeal, can suffice to confer jurisdiction there.  In doing so, we take the opportunity to clarify bill of exceptions practice as outlined above.

¶56.   In order to restore fairness and sensibility to the bill of exceptions process, we hold that, going forward, the ten-day deadline contained in the statute applies to the filing of the bill of exceptions with the clerk of the county or municipal board.  In *Board of Supervisors of Marshall County v. Stephenson*, 160 Miss. 372, 134 So. 142 (1930),  the Court held that the aggrieved party perfected an appeal from a decision of the board of supervisors on the day the bill of exceptions was filed with the clerk of the board of supervisors. *Id.* at 143-144.  The Court wrote that, once filed with the clerk of the board of supervisors, the bill of

exceptions "should have been filed at once [in circuit court] by the clerk of the board of supervisors." *Id.* *See also* **Shannon Chair Co. v. City of Houston**, 295 So. 2d 753, 755 (Miss. 1974) (holding that a bill of exceptions not presented to the mayor within ten days of adjournment of the pertinent meeting was untimely and must be dismissed); **Faison v. City of Indianola**, 156 Miss. 872, 127 So. 558, 559 (1930) (Bill of exceptions considered timely when presented to the board). Accordingly, as long as the bill is filed for consideration with the board within ten days, the courts must consider it to be timely. As was the practice when bills of exception were more commonly used, nothing is filed with the circuit court until the clerk of the board fulfills the duty of submitting the signed bill of exceptions to the circuit court. Although in our later cases, such as **Lowndes County v. McClanahan**, 161 So. 3d 1052, 1055 (¶ 13) (Miss. 2015), we wrote in passing that a bill of exceptions is filed in the circuit court, we have been unable to find a case in which we considered the issue and overruled the established practice of filing the bill with the clerk of the board first, leaving the clerk to follow the statutory directive of filing the bill with the circuit court.

¶57. If the aggrieved party and the board dispute the accuracy of the record and, for that reason or any other, the president of the board refuses to sign the bill of exceptions as required by the statute, then the aggrieved party can, as was the practice, file a petition for mandamus with the circuit court. The circuit court is best equipped to decide and create a record of such disputes. The circuit court likewise is equipped to consider whether other imperfections in the bill of exceptions render the record before it insufficient to consider the matters excepted.

¶58. However, in order to return to the historical practice surrounding the bill of exceptions outlined above, some work must be done. For example, in *Bowen*, the person aggrieved by the DeSoto County Board of Supervisors' decision did not file a proposed bill of exceptions with the board within ten days, as was the historical practice. Rather, the aggrieved party, John Bowen, filed a notice of appeal with the circuit court within the first ten days. *Bowen*, 852 So. 2d at 22 (¶ 1). The circuit court dismissed the notice of appeal because Bowen never had filed a bill of exceptions. *Id.* The *Bowen* Court held that the bill of exceptions merely functioned as a vehicle for establishing the record on appeal and was not a requirement for the circuit court to hear Bowen's appeal from the board of supervisors. *Id.* at 24 (¶ 9). The Court wrote, "In the case sub judice, Bowen properly and timely filed a notice of appeal. We find that sufficient to vest jurisdiction." *Id.* The *Bowen* Court's judgment cannot coexist with Section 156 of the Constitution, which mandates that circuit court appellate jurisdiction must be "prescribed by law," considering that the law which prescribes circuit court jurisdiction in appeals from county and municipal boards mandates – and for decades has been held to mandate – the use of the bill of exceptions to do so. Notably, the *Bowen* Court reached its holding without overruling or discussing the myriad earlier cases that recognized the mandatory nature of the bill of exceptions – including, *inter alia*, *Varia*. Indeed (and confusingly), after the Court handed down *Bowen*, the bill of exceptions was affirmed as a jurisdictional requirement in the later case of *McIntosh v. Amacker*, 592 So. 2d 525, 527 (Miss. 1991). *Bowen* resulted in the convoluted practice – foreign to the long pre-*Bowen* history of the bill of exceptions – of aggrieved parties filing both a bill of exceptions with the

28

clerk of the board and a notice of appeal in the circuit court. *See, e.g.,* ***Ball v. Mayor and Bd. of Aldermen of City of Natchez***, 983 So. 2d 295, 302 (¶ 23); ***Grist v. Farese***, 860 So. 2d 1182 (Miss. 2003). Today we should take advantage of the opportunity to overrule ***Bowen***, which allows clarification and simplification of the bill of exceptions process by returning to that which the statute actually provides, which is the filing of a bill of exceptions with the clerk of the appropriate county or municipal board.

¶59. In his separate opinion, Justice Chamberlin characterizes the bill of exceptions as an optional procedural vehicle. (Sp. Con. at ¶ 88). However, the Legislature cannot set court procedure in statutes. ***Newell v. State***, 308 So. 2d 71 (Miss. 1975). In ***Newell***, we held that, pursuant to the separation of powers in Mississippi's Constitution, we have the sole authority to control court procedures, but Section 11-51-75 provides nothing about the courts until it requires the clerk of the county or municipal board to forward the signed bill of exceptions to the clerk of the circuit court. The Section 11-51-75 directives that the clerk of the board accept the bill of exceptions and that the president of the board sign the bill of exceptions apply to actions that take place outside the courts, and therefore cannot be matters of court procedure.

¶60. The unique nature of Section 11-51-75 bills of exceptions, which allow the decisions of county and municipal legislative bodies to be appealed to the judicial branch of government, poses another problem for Justice Chamberlin's characterization of them as optional procedures. Pursuant to Mississippi Rule of Appellate Procedure 3(a), notices of appeal are filed in the trial court. Our constitutional authority to establish court procedures

29

does not give us the authority to require municipal and county boards to accept notices of appeal which are filed there. Similarly, it does not give us the authority to direct them to forward completed records to the courts. Only the Legislature may direct county governments to act, and it has in Section 11-51-75. If bills of exceptions are abandoned, then no constitutionally viable means of appeal from a county or municipal board remains.

**F.     The lack of a signature did not deprive the circuit court of jurisdiction in the case *sub judice*.**

¶61.     For the first time on appeal, the City criticizes Allen's bill of exceptions because it read like a complaint and did not contain any of the necessary parts of the record, such as the report of the zoning administrator and staff, the minutes and transcript of the Planning Board, or the minutes of the City Council. Indeed, the report of the zoning administrator, minutes of the Planning Board, and minutes of the City Council were not included or attached to Allen's bill of exceptions or amended bill of exceptions; rather Allen attached the documents to his motion to stay. The circuit court took judicial notice of the documents that Allen attached to his motion to stay, as well as the minutes and video recording of the City Council meeting under Mississippi Rule of Evidence 201(b)[3] and ***Ditto v. Hinds County***, 665 So. 2d 878, 880-81 (Miss. 1995) (holding that the minutes of a board of supervisors meeting were

---

[3] Rule 201(b) provides: "(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Miss. R. Evid. 201(b).

properly noticed judicially because they were easily ascertainable through certified public records).[4]

¶62. The City does not dispute the content or accuracy of any of the documents judicially noticed by the circuit court, nor did the City argue to the circuit court that an insufficient record was before it. Instead, the City filed a motion to dismiss Allen's appeal to the circuit court based on standing and the failure to join necessary and indispensable parties. While insufficiency of the record may have been grounds for dismissal on a Rule 12(b)(6) motion for the circuit court, the lack of the signature of the president of the City Council did not deprive the circuit court of jurisdiction, as discussed above. *See* ***Polk***, 69 So. at 676. Under ***Stewart*** and ***Weathersby***, as clarified above, even an insufficient record does not rob the circuit court of jurisdiction. Indeed, the lack of a signature of the bill of exceptions goes to the adequacy of the record to decide the excepted issues rather than the authority of the court to hear the appeal. Here, without objection, the circuit court properly concluded, imperfections aside, the record presented by the bill of exceptions provided sufficient information for review.

---

[4] The Court has stated that "[i]t has long been settled law in this State that the courts do not and can not take judicial knowledge of municipal contracts and ordinances." ***Stewart v. City of Pascagoula***, 206 So. 2d 325, 327 (Miss. 1968). However, the Court's holding in ***Stewart*** no longer is applicable since the adoption of the Mississippi Rules of Evidence. *See* Miss. R. Evid. 1103 ("Any evidentiary rule in a statute, court decision, or court rule that is inconsistent with the Mississippi Rules of Evidence is hereby repealed." Indeed, the Court held in ***Ditto*** that the circuit court was permitted to take judicial notice of the minutes of a meeting of a county board of supervisors under Mississippi Rule of Evidence 201 because the minutes were easily ascertainable through certified public records. ***Ditto***, 665 So. 2d at 880-81; *see also* ***In re Validation of Tax Anticipation Note***, ***Series 2014***, 187 So. 3d 1025, 1035 (¶¶ 28-29) (Miss. 2016).

¶63. The circuit court stated in its order that it had reviewed documents pertaining to the rezoning matter that had been supplied to Allen by the City Planning Department and which were contained in the collective exhibit to Allen's motion to stay. The circuit court also reviewed the exhibits attached to Allen's motion to compel the City to sign the bill of exceptions and to compile the record. The circuit court took judicial notice of the City Council's meeting and the video recording. Accordingly, the circuit court, without objection from the City, concluded it had a sufficient record before it to find that the City Council had voted to rezone the subject property in a vote of two to one.

¶64. Section 21-8-11 provides, in relevant part: "At any and all meetings of the council, a majority of the members thereof shall constitute a quorum and the affirmative vote of a majority of the quorum at any meeting shall be necessary to adopt any motion, resolution or ordinance, or to pass any measure whatever unless otherwise provided in this chapter." Miss. Code Ann. § 21-8-11 (Rev. 2015).

¶65. The Jackson City Council is a seven-member body. Only four members of the City Council were in attendance at the subject September 21, 2015, meeting. One of the four members present abstained from voting due to a conflict of interest. Based on the record before it, the circuit court found that the City Council's vote did not constitute a majority of the quorum under Section 21-8-11, where only two of the four members present at the City Council meeting voted to adopt the rezoning ordinance on the property. As a result of the unlawful vote, the circuit court reversed the City Council's decision to rezone the property.

32

¶66. The circuit court found that the minutes of the City Council meeting should have reflected that the motion failed for lack of a majority and directed the City to advise the members of the City Council of its findings and supply it with a copy of its order reversing the City Council's decision under Section 11-51-75, which provides in pertinent part: "If the judgment be reversed, the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities." Miss. Code Ann. § 11-51-75 (Rev. 2012). We agree with the circuit court's findings and affirm.

## II. Standing

¶67. The City argues that Allen as President of Downtown Jackson Partners lacked standing to bring an appeal because he is not a "person aggrieved" under Section 11-51-75. The City argues that Downtown Jackson Partners is not a "person aggrieved" by the City Council decision because it does not own, nor does it have an interest in, property which is or may be affected by the rezoning of the subject property.[5]

¶68. In *Burgess v. City of Gulfport*, 814 So. 2d 149, 152-53 (¶ 13) (Miss. 2002), the Court explained what is required for a party to have standing to bring a civil action. The Court stated:

> It is well settled that Mississippi's standing requirements are quite liberal. This Court has explained that while federal courts adhere to a stringent definition of standing, limited by Art. 3, § 2 of the United States Constitution to a review of actual cases and controversies, the Mississippi Constitution

---

[5] The City does not argue on appeal whether Allen has standing to file a bill of exceptions in his individual capacity; rather, the City limits its argument to Allen's standing in his capacity as President of Downtown Jackson Partners.

contains no such restrictive language. Therefore, this Court has been more permissive in granting standing to parties who seek review of governmental actions. In Mississippi, parties have standing to sue when they assert a colorable interest in the subject matter of the litigation or experience an adverse effect from the conduct of the defendant, or as otherwise provided by law.

*Id.* (citations and quotations omitted). Thus, "[i]n order for [Allen] to have standing in this matter, he must demonstrate that the City's action had an adverse effect on property in which he has an interest." *City of Madison v. Bryan*, 763 So. 2d 162, 166 (¶ 20) (Miss. 2000).

¶69.    The City argues that Allen failed to meet the associational standing requirements of the New York test discussed by the Court in *Belhaven Improvement Association, Inc. v. City of Jackson*, 507 So. 2d 41, 46-47 (Miss. 1987).[6] Although the Court stated the New York test was helpful in considering a standing question, the Court expressly stated that it did not embrace the *entire* New York test. *Id.* at 47. Instead, the Court held:

> For standing, the person(s) aggrieved, or members of the association, whether one or more, should allege an adverse effect different from that of the general public. Also, they should show the fact of a representative capacity, particularly of those adversely affected. An association should not be permitted to close out minority members, cutting off their views entirely, particularly where the effect on some individuals would be greater than the effect on the majority. Membership in the association should be limited to residents and property owners.

*Belhaven Improvement Ass'n*, 507 So. 2d at 47.

---

[6] "The New York rule requires the Court to consider four factors, *i.e.*: (1) the capacity of the organization to assume an adversary position, (2) the size and composition of the organization as reflecting a position fairly representative of the community or interest which it seeks to protect, (3) the adverse effect of the decision sought to be reviewed on the group represented by the organization as within the zone of interests sought to be protected, and (4) the availability of full participating membership in the organization to all residents and property owners in the relevant neighborhood." *Belhaven Improvement Ass'n, Inc. v. City of Jackson*, 507 So. 2d 41, 46 (Miss. 1987).

¶70.    In ***Mississippi Manufactured Housing Association v. Board of Aldermen of City of Canton***, 870 So. 2d 1189, 1192 (Miss. 2004), the Court stated "[i]n ***Belhaven***, we set out our requirements for standing." ***Mississippi Manufactured Hous. Ass'n***, 870 So. 2d at 1193 (¶ 12). In the same opinion, the Court expressly adopted and applied the federal test to determine associational standing. ***Id.*** at 1194-95 (¶¶ 22, 24). The federal test provides that "[a]n association has standing to bring suit on behalf of its members when (1) its members would otherwise have standing to sue in their own right, (2) the interest it seeks are germane to the organization's purpose, and (3) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." ***Id.*** at 1192 (¶ 11). Despite citing with approval the standing requirements identified by the ***Belhaven*** Court, the Court limited its standing analysis to the three prongs of the federal test. ***Id***. at 1193 (¶ 15). As a result, we analyze Allen's standing in his capacity as the President of Downtown Jackson Partners under the federal test.

¶71.    Downtown Jackson Partners is the district management group for the Downtown Jackson Business Improvement District, so designated under the district plan adopted by the district's property owners pursuant to the Business Improvement District Act. Downtown Jackson Partners is funded through a self assessment made by property owners of the Downtown Jackson Business Improvement District to provide economic development, marketing, and clean and safe services to the district.

¶72.    The subject property is located in the Old Capitol Green Mixed Use District. Under Subsection 708.03.04 of the City's Zoning Ordinance, Downtown Jackson Partners is

provided a direct role in regulating the development of the Old Capitol Green Mixed Use District. Subsection 708.03.04 specifically provides:

> The Downtown Business Improvement District will be expanded subject to property owners' approval to include all properties within the confines of the Old Capitol Green Mixed Use District. Property owners will be subject to an annual assessment fee as established by the Downtown Jackson Partners. All new developments, enlargements, alterations or demolitions of existing buildings within the OCG-MUD will be subject to the Old Capitol Green Sustainable Design Guidelines and the Old Capitol Green Master plan. Such documents will be managed and administered by the Downtown Jackson Partners. The documents shall be on file at the City of Jackson's City Clerk's Office.

¶73. Allen claims that Downtown Jackson Partners will be negatively impacted by the rezoning decision because the subject property no longer will be classified as Old Capitol Green Mixed Use District. As a result, Downtown Jackson Partners no longer will be able to ensure that the property will adhere to the Old Capitol Green Sustainable Design Guidelines and the Old Capitol Green Master Plan as provided in Subsection 708.03.04.

¶74. The circuit court found that "Allen has standing to bring this appeal as the President and Chief Executive Officer of Downtown Jackson Partners, which was created by the property owners [of the district] to manage the Downtown Jackson Business Improvement District." Certainly, Downtown Jackson Partners has asserted a colorable interest in the subject matter of the litigation and has demonstrated that the City's action had an adverse effect on property in which it has an interest. The circuit court also found that "[a]s president of the organization [Allen] represents the interests of the property owners of the district, who individually would also have standing to take an appeal as aggrieved parties to the rezoning

36

decision." We cannot say that the trial court abused its discretion in making its factual findings as to Allen's standing in his capacity as President of Downtown Jackson Partners.

¶75. The interest of preventing the property being rezoned for the purpose of allowing the operation of a used car dealership in the Old Capitol Green Mixed Use District certainly is germane to the Downtown Jackson Partners' purpose of ensuring compliance with the Old Capitol Green Sustainable Design Guidelines and the Old Capitol Green Master Plan. Allen assured that property owners in the Downtown Jackson Business Improvement District will suffer negative impacts to their use, enjoyment and value of their respective properties.

¶76. The relief sought by Allen on behalf of Downtown Jackson Partners does not require individual members. The Court has stated:

> Whether an association has standing to invoke the court's remedial powers on behalf of its members depends in substantial measure on the nature of the relief sought. If in a proper case the association seeks a declaration, injunction, or some other form of prospective relief, it can reasonably be supported that the remedy, if granted, will inure to the benefit of those members of the association actually injured.

*Mississippi Manufactured Hous. Ass'n*, 870 So. 2d at 1194 (¶ 20).

¶77. Moreover, when an association seeks only prospective relief and raises only issues of law, it need not prove the individual circumstances of its members to obtain relief, and the third element of associational standing is met. *Id*. at (¶ 21). The owner of the property at issue, located within the Old Capitol Green Mixed Use District, obviously does not share the same interest as Downtown Jackson Partners because he sought to have the property rezoned. Regardless, the relief sought by Allen on behalf of Downtown Jackson Partners will insure

37

the benefit of the members of the association actually injured, *i.e.*, the remaining property owners in the district.

¶78.    Given the Court's liberal standing requirements, the Court cannot say that the circuit court abused its discretion in finding that Allen in his capacity as President of Downtown Jackson Partners has standing.  Thus, the City's argument is without merit.

### III.    Whether the owner and lessor of the property are necessary and indispensable parties.

¶79.    The City argues for the first time on appeal that the property owner and lessor have a basic, due process right to be joined or at least to have sufficient notice of the appeal.

¶80.    In the City's motion to dismiss, the City limited its argument to the failure to join necessary and indispensable parties under Mississippi Rule of Civil Procedure 19(a)(2). However, the City did not mention Rule 19 in its appellant's brief on the issue and apparently has abandoned the theory on appeal.  *See **Magee v. State***, 542 So. 2d 228, 234 (Miss. 1989) ("Th[e] Court has traditionally held that where an assignment of error is not discussed in the briefs it is considered abandoned or waived.").  Even if the Court were to apply Rule 19(a)(2), the City's argument fails.  Neither the property owner nor the lessor has appeared and sought to intervene to "claim[] an interest relating to the subject matter of the action[.]" *See* Miss. R. Civ. P. 19(a)(2).

¶81.    Instead, the City argues for the first time that the property owner and lessor, who had requested the rezoning, were not given notice of Allen's appeal or any opportunity to respond to an action that would affect the value of the property.  Because the City failed to raise the due process argument in the circuit court, it is barred from raising the argument for the first

time on appeal. *See* ***Weiner v. Meredith***, 943 So. 2d 692, 696 (¶ 17) (Miss. 2006) ("It is well established that this Court does not entertain arguments made for the first time on appeal as the case must be decided on the facts contained in the record and not on assertions in the briefs.").

¶82.   Even assuming the City is able to advance the new due process argument for the first time on appeal, the argument fails.  The record contains no evidence as to whether or not notice of Allen's appeal to the circuit court was provided to the property owner and lessor. The only information related to who received notice may be inferred from the certificates of service of Allen's pleadings filed in the circuit court and do not include Marcellus Hogan or James Miles.  The record shows no effort on the City's behalf to ensure that the property owner and lessor received notice of Allen's appeal to the circuit court.  Notably, the certificate of service to the City's motion to dismiss did not include the property owner and lessor.  The City did not file a motion to join the property owner or lessor.  The City's inaction regarding notice to the property owner and lessor makes its due process argument seem hollow.

¶83.   The City simply argues that in ***McKee v. City of Starkville***, 97 So. 3d 97, 102 (¶ 13) (Miss. Ct. App. 2012), the Mississippi Court of Appeals held that due process requires notice and the opportunity to be heard at all critical stages of the process.  However, in ***McKee***, the applicant was not given notice or any opportunity to be heard before the meeting of the board of alderman at which his rezoning request was considered.  ***Id***. at 98 (¶ 2).  Unlike the applicant in ***McKee***, the property owner and lessor filed a written notice of appeal of the

39

Planning Board's decision and received notice of the City Council hearing, yet did not appear at the hearing. In *McKee*, the applicant himself appealed the decision of the board of aldermen to the circuit court and argued that his individual due process rights were violated because he did not have notice of the board of aldermen's meeting at which his rezoning request was denied. *Id.*

¶84. Here, the City lacks standing to assert the argument on behalf of the property owner and lessor. The City cites no authority that it may step into the shoes of the property owner and lessor and assert a due process violation on their behalf. *See Humphries v. Humphries*, 904 So. 2d 192, 196 (¶ 10) (Miss. Ct. App. 2005) ("One prudential limit on standing is that a litigant must normally assert his own legal interests rather than those of third parties.") (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985)). The City's argument is without merit.

## CONCLUSION

¶85. Following the City's refusal to comply with its ministerial duty to sign the bill of exceptions under Section 11-51-75, Allen proceeded by filing an unsigned bill of exceptions embodying the pertinent facts. Despite the lack of a signature, the circuit court properly exercised jurisdiction. The circuit court took judicial notice of the City Council minutes and video of the City Council meeting. The record presented by the bill of exceptions and materials judicially noticed were sufficient for the circuit court's review.

¶86. We affirm the circuit court's order reversing the City Council's decision because of a lack of a majority vote of a quorum under Section 21-8-11. We also affirm the circuit

40

court's order finding Allen has standing to file a bill of exceptions in his capacity as President of Downtown Jackson Partners. Finally, we affirm the circuit court's finding that the property owner and lessor were not necessary and indispensable parties to the appeal. The City's due process argument was not preserved in the circuit court, and even if it had been preserved, the City's argument is without merit because it has no standing to assert the due process rights of the property owner and lessor.

¶87. **AFFIRMED.**

**RANDOLPH AND KITCHENS, P.JJ., MAXWELL AND BEAM, JJ., CONCUR. CHAMBERLIN, J., SPECIALLY CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., KING, BEAM AND ISHEE, JJ.; RANDOLPH, P.J., AND MAXWELL, J., JOIN IN PART. WALLER, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. KING, J., CONCURS IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION.**

**CHAMBERLIN, JUSTICE, SPECIALLY CONCURRING:**

¶88. I agree with the result reached by the majority. I also applaud the excellent recitation of the history of the bill of exceptions in our state. However, I must specially concur because, as that same history shows, the law surrounding the bill of exceptions has become a convoluted, unworkable mess. It is a legal dinosaur that somehow avoided the fallout from the judicial meteors that became our procedural rules. It is, nevertheless, law and we should recognize the bill of exceptions for what it is, an optional procedural vehicle to compile the record of proceedings.

¶89. Mississippi Code Section 11-51-75 contains, in my view, only one jurisdictional mandate, that any appeal be filed within ten days from the date of adjournment. The

41

language regarding the bill of exceptions merely embodies the method of compiling the record. Further, it is optional, as denoted by the word "may" preceding the procedure. The majority treats this permissive language as both mandatory and jurisdictional. I disagree.

¶90. The majority opines that this special concurrence runs afoul of *Newell v. State*, 308 So. 2d 71 (Miss. 1975). That is incorrect. I make no comment on the constitutionality or enforceability of the bill of exceptions, only that it is not mandatory. While resorting to this procedure may be necessary, if constitutional and enforceable, in some appeals from lower authorities, it simply is not a mandatory jurisdictional requirement. I, therefore, specially concur.

**WALLER, C.J., KING, BEAM AND ISHEE, JJ., JOIN THIS OPINION. RANDOLPH, P.J., AND MAXWELL, J., JOIN THIS OPINION IN PART.**